COLVIN v. McCORMICK COTTON OIL CO.

1. CONTRACT—DAMAGES.—In action for breach of contract in failure to deliver at contract time cotton mill machinery, damages to cotton seed bought and stored for manufacture arising from heating and expense incurred in handling and cooling them, are within the reasonable contemplation of the parties. Rules of ascertaining damages in cases of breach of contract stated.

2. EVIDENCE—"CASE."—AN OBJECTION to competency of evidence will not be considered unless the "Case" shows the ground of objection urged on the Circuit Court.

3. CONTRACTS.—PAROL EVIDENCE is competent to show negotiations between parties leading up to the execution of a contract, provided it does not contradict or vary the terms of the written contract.

4. EVIDENCE responsive to issues permitted to remain in an answer is competent.

5. CONTRACT—DAMAGES—REMOTE.—EXPENSES incurred by party to a contract after its breach, in reasonable expectation that delinquent would perform his part and induced by his words or acts, and while it was being so performed, are not remote as damages flowing from

the breach, and are not attributable to party's own act, but were reasonably within the contemplation of the contracting parties.

6. DISCRETION.—LEADING QUESTIONS are largely within discretion of trial Judge.

7. CONTRACT—DAMAGES.—The rule that in breach of contract the delinquent can only be charged with such damages as could not have been prevented by reasonable expense or exertion, was not intrenched upon by the instructions here.

8. IBID.—IBID.—JURY—ACTS—WORDS.—WHETHER the acts and words of a delinquent in breach of contract were such as to cause a reasonable and prudent man to incur expenses after breach in expectation of performance, is a question for the jury.

9. NEW TRIAL.—WHERE there is no evidence to support a verdict, it is error of law to refuse to set it aside.

Before TOWNSEND, J., Abbeville, October term, 1901. Reversed.

Action by Jas. A. Colvin against McCormick Cotton Oil Co. From judgment for defendant, plaintiff appeals.

*Messrs. Henry C. Hammond, Parker & Greene,* for appellants. The latter cite: *The rule for recovery of damages in breach of contracts:* Wood's Mayne on Dam., 20, 41; Hale on Dam., 62, 63; 100 Ind., 237; 41 Ia., 674; 137 Mass., 55; 74 Ga., 233; 42 Am. Dec., 38; 17 S. C., 73; Hale on Dam., 61. *Incompetent to offer evidence of damages outside of written contracts:* Hale on Dam., secs. 46-7; 42 S. C., 1; 24 S. C., 124; 27 S. C., 379; 13 S. C., 332; 1 Green. Ev., sec. 439; 61 S. C., 166. *Damages for breach of contract are such as naturally result therefrom:* 67 Conn., 480; 8 Ency., 2 ed., 578; 2 Waits Act. and Def., 441; 62 S. C., 15. *Claimant must take reasonable precautions to reduce damages:* Hale on Dam., 64-5-8; 17 Pick., 284; 2 Metc., 615; 26 U. S., 1120; 26 L. R. A., 167; Sedgw. on Dam., 8 ed., 741; 6 Wall., 94. *This rule is akin to contributory negligence:* 61 S. C., 566; 26 L. R. A., 160; 11 L. R. A., 364; 6 Am. St. R., 360; 41 Am. St. R., 37; Wood's Mayne on Dam., sec 65; 26 Am. St. R., 104. *In*

*counter-claim or setoff defendant must state facts that make up defense:* 37 S. C., 16; 100 Ind., 237; 41 Ia., 674; *Admission of promise to pay is allegation of ownership:* 1 Or., 147. *Plaintiff can recover without being holder of claim:* 30 Barb., 72; 16 N. Y., 582. *Averment of ownership is allegation of legal conclusion:* 9 How. Prac., 216; 11 Id., 217; 12 Id., 460; 35 Cal., 118. *Production of contract was sufficient to show ownership:* 108 L. R. A.. 302; 1 Green. Ev., sec. 34. *No evidence to support the verdict·* 57 S. C., 289. *It is proper to show jury made a mistake:* Harp. Eq., 83.

*Messrs. Johnstone & Welch* and *Frank B. Gary,* contra. The latter cites: *As to the right to allege and prove special contract and agreement:* 61 S. C., 166; 57 S. C., 60. *Rule for measuring damages:* 25 S. C., 71. *Evidence in response to allegations allowed to remain in pleading is competent:* 57 S. C., 60, 506. *Ground of objection not stated below cannot be made here:* 59 S. C., 243; 53 S. C., 80. *As to consequential losses from breach of contract:* 25 S. C., 71. *Disqualification of jurors must be moved on before beginning of case:* 56 S. C., 380; 55 S. C., 95. *No error to refuse new trial:* 53 S. C., 215.

April 18, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES. This action was brought to recover an alleged balance of $1,700.79, with interest, and ten per cent. thereof additional as attorney's fees, as the amount due upon a written contract for the sale and purchase of certain cotton oil mill machinery. By way of defense and also by way of counter-claim, defendant sets up damages for alleged breach of contract by plaintiff in failing to deliver the machinery and putting the mill in running order within the time specified to the amount of $1,909.12. The jury rendered a verdict in favor of defendant for $726, and from the judgment thereon comes this appeal by the plaintiff.

The exceptions are very numerous, thirty-two in number, with many subdivisions, but we will consider them under the following subject heads:

1. Demurrer to the answer. Exceptions one to five, inclusive, assign error in overruling plaintiff's demurrer to the answer made upon the grounds that it did not state facts sufficient to constitute a defense or counter-claim, the specifications being that the damages alleged in the answer were not the proximate or the direct and the natural result of the alleged breach of contract, but were too remote, not within the contemplation of the parties to the contract, consequential and the result of defendant's own acts. The demurrer was to the answer as a whole and not to any particular item of damages alleged therein. If, therefore, there is any item of damages alleged therein which is proper, then the demurrer must be overruled. The defense and counter-claim alleged in the answer were both based upon the same specifications of damages. We quote, therefore, the 6th paragraph of the answer relating to the counter-claim:

"6. That the defendant alleges that early in May, 1899, it contracted with the plaintiff for the machinery mentioned in the complaint herein. That at that time it was understood and agreed that said machinery, constituting the mill, should be delivered on or before the 15th of September of said year; and that the plaintiff should have it in running order within two or three weeks from said date. These dates were fixed with the understanding and agreement that the defendant could prepare to begin manufacturing at the beginning of the cotton oil season of 1899-1900, and so that the defendant could make its arrangements to that end. That the plaintiff under this condition of affairs failed to perform and on the other hand violated its contract with the defendant; that the machinery was not shipped until many weeks after the aforementioned date when it was contracted that it should be shipped and was not put in running order until January of 1900. That acting upon the understanding and

agreement aforesaid with the plaintiff, the defendant made all preparations and arrangements to begin manufacturing at the beginning of the season of 1899-1900. That the defendant purchased cotton seed looking to that end; that the defendant afterwards was compelled in order to prevent these seed from heating and spoiling to have them moved or aired two or three times a week from October 1, 1899, to December 1, 1899, at a cost of $96; that on account of the crowded condition of its warehouse—produced by the aforementioned delay of the plaintiff—it incurred an extra expense in the unloading of twenty-five cars of seed amounting to $50; that it had temporarily to place 300 tons of cotton seed in its hull house and afterwards to remove them to the mill, incurring wastage and extra expense in connection therewith to the amount of $75; that owing to the aforementioned delay it was compelled to transfer 50 tons of hulls from the meal room to the hull house, at a cost of $10; that for four months the defendant was compelled, on account of said delay, to rent an extra warehouse, at an expense of $40; that owing to said delay the defendant was compelled to transfer 100 tons to and from the aforementioned rented warehouse, incurring a loss thereby in waste and expense amounting to $100; that pending the erection of the mill, as hereinbefore stated, the defendant was compelled to incur an extra expense or prolonged interest period on borrowed money, amounting to $324.62; that on account of said delay the defendant paid out money on insuring seed amounting to $27.50; that owing to the delay aforesaid 250 tons of cotton seed became heated and thereby damaged to the extent, together with extra press cloths rendered necessary, of $600; that owing to the said delay the defendant incurred an expense of $100 in preserving 700 tons of seed that became heated, and were only preserved for manufacturing purposes by being moved and thereby cooled; that owing to the said delay some of the seed became partially heated and the meal therefrom depreciated in value to the extent of $256, and the oil therefrom deteriorated in

5—66

value to the extent of $90; that owing to the aforementioned delay, 35 tons of the meal manufactured by this defendant from injured or heated seed was so inferior as to be unsuited to the general market, and had to be disposed of at a loss of $140; these losses and expenses amounting to $1,909.20 incurred and suffered by the defendant on account of the delay, failure and breach of the understanding and agreement by the plaintiff as hereinbefore set forth, this defendant alleges constitute a counter-claim as against any sum that may be due to the plaintiff, and the defendant demands judgment therefor against the plaintiff."

In the case of *Sitton* v. *McDonald*, 25 S. C., 70, the Court said: "The rule as to the proper measure of damages (in an action for damages for the breach of a contract) is not always free from difficulty. It is not the same under all circumstances, but necessarily varies to meet the varying cases as they arise. It is different in actions *ex contractu* from those in tort. In the former, it is more restricted, the fundamental principle being that the damage must be 'the primary and immediate result of the breach of contract.' Wood's Mayne Dam., sec. 12; *Tappan & Noble* v. *Harwood*, 2 Speer, 536; *D'Orval* v. *Hunt*, Dudley, 180. In the latter well considered case, it was held that, 'for the breach of an executory contract, without fraud or imposition, the jury can only give such damages as fairly and naturally result from it, and which can be measured by a pecuniary standard; remote and consequential damages cannot be allowed.' This is undoubtedly the rule; but it is not always easy to fix the exact limit between what is primary and secondary or what is immediate or consequential and remote. If the breach is merely in the tardy delivery of the property intended for sale, it is obvious enough that ordinarily the damage would be the difference in the price realized from that which might have been obtained at the proper time. But if the breach is in the non-delivery of an article not intended for sale but for use in some particular business, other considerations intervene, and the matter is not so clear. In

this class of cases, the Courts have endeavored to lay down
certain rules to assist in fixing the damages upon proper
principles. In *Hadley* v. *Baxendale* (9 Exch., 341), which
seems to have been considered a leading case both in Eng-
land and America, the following rules are indicated: 'First,
that damages which may fairly and reasonably be considered
as naturally arising from a breach of contract according to
the usual course of things are always recoverable. Second,
that damages which would not arise in the usual course of
things from a breach of contract but which do arise from cir-
cumstances peculiar to the special case are not recoverable,
unless the special circumstances are known to the person
who has broken the contract.' See Wood Mayne Dam., sec.
14, and notes."

Applying these principles to the case as presented by the
demurrer to the answer, the allegations in the answer being
thereby admitted to be true for the purpose of the demurrer,
we cannot say as matter of law that not a single item of
damages alleged naturally arose in the usual course of
things from the alleged breach of contract, nor can we say
that no item of damages alleged arose from the special or
peculiar circumstances of the case which was not known to
the plaintiff. Take, for example, the injury alleged to have
been sustained from the heating of the cotton seed bought
and stored for the use of the mill by reason of the delay in
putting in the machinery. It was within the reasonable con-
templation of the parties that defendant would lay in a
stock of cotton seed and store them for use in the operation
of the mill machinery which plaintiff contracted to provide
for the season of 1899-1900. If by reason of the delay in
placing the machinery, the cotton seed heated and damaged
in the store room to any extent not attributable to the negli-
gence of defendant, or if defendant in a proper effort to limit
or prevent the injury to be apprehended from heating was
put to extra expense in handling and cooling the seed aris-
ing from plaintiff's delay, these clearly come within the rule
stated. The demurrer was, therefore, properly overruled.

2. Admissibility of testimony. Exceptions six to fifteen, inclusive, allege error in rulings as to the admissibility of certain testimony. First, the witness, Bushnell, over objection, was asked, "What representation did you make to get these gentlemen to buy that machinery?" To this plaintiff objected, without stating any ground therefor. The Court ruled that if there was any agreement, they can show it. This witness was also asked, over objection, "Did not they inform you that the reason that they wanted that machinery shipped by the 15th of September and erected and in operation within two or three weeks after that date, was that they wanted to get advantage of the full season of 1899-1900?" No ground of objection was stated. It is now contended that these rulings were erroneous, because the written contract was the best evidence of all representations leading up to the contract, and that the written contract in evidence contained a stipulation that "there is no understanding or agreement not on the face of this paper." We must overrule the sixth and seventh exceptions relating to this matter, for the reasons: (1) In order to review the ruling of the Circuit Court as to the competency of testimony, the record must show the specific ground of objection urged before the Circuit Court or the specific ground upon which the Court rested the ruling. *Allen* v. *Cooley,* 53 S. C., 80, 31 S. C., 634; *Norris* v. *Clinkscales,* 59 S. C., 243; 31 S. E., 821. (2) Parol testimony is competent to show the negotiations between the parties leading up to the execution of a written contract. provided it does not contradict or vary the terms of the written contract. *Bruce* v. *Moon,* 57 S. C., 60, 35 S. E., 415. The written contract in this case stipulated that the machinery was to be delivered on or before September 15, 1899, and contained an agreement by plaintiff to furnish the services of an erecting engineer to superintend the erection of the machinery.

Second. The witness, J. E. Britt, over objection, stating

the ground of objection, was permitted to be asked and to answer the following questions: "What arrangements were made outside of this contract here in connection with the different reasons that were given for fixing the date of delivery, and what other arrangements were made about the delivery of the machinery and the setting it up in time for work?" "What was that statement to him and why was the date fixed the 15th of September?" "Did you tell him what arrangements you wanted to make about operations?" The objection to this testimony was that the written contract is the best evidence and its terms cannot be varied. The witness answered: "We explained to Mr. Bushnell that we wanted that machinery in time for the opening of the coming season, and he agreed to have it there in ample time, and we wanted him to fix the date of shipment as September 1st, and he wanted fifteen days more, and we agreed for him to ship it by the 15th of September." "We told him that we would go ahead and buy cotton seed and make all of our arrangements about borrowing money, etc., in order to commence operations with the mill at the beginning of the season, and he said, 'All right, go ahead and make all arrangements.' " We do not see that this testimony altered, varied or contradicted the written contract. It merely showed the circumstances and negotiations which lead to the contract and consistent therewith, falling within the rule stated in *Bruce* v. *Moon, supra.* The eighth exception is, therefore, overruled.

The ninth exception complains of error in allowing the witness, Britt, to testify as to damages to cotton seed bought after the breach of the contract, the same being too remote and result of defendant's own act. The only objection presented to the Circuit Court was that the testimony should be limited to the damages to cotton seed which were purchased on or before the 15th September. The testimony was responsive to the allegations in defendant's answer, which remained therein without objection and was, therefore, com-

petent. Besides, we think testimony as to such damages was permissible, if defendant continued to buy and store cotton seed after the 15th September, 1899, in reasonable expectation that plaintiff would afterwards place the machinery.

For these reasons, the tenth exception must also be overruled, which assigns error in allowing the witness, Britt, to answer questions as to the amount of money defendant was compelled to borrow in consequence of plaintiff's breach of contract.

The eleventh exception alleges error in permitting defendant's counsel in examining the witness, Britt, to read to witness from the answer. The case shows that when this objection was made, defendant's counsel withdrew proposed question. Later, defendant's counsel asked the witness this question: "You allege that you had 700 tons of seed?" and to this appellant excepts upon the ground that it was leading and suggested the answer. This objection was not raised in the Circuit Court, and if it had been it would not have been ground for reversal, as it is very largely left to the discretion of the trial Court how far he will permit leading questions.

The twelfth and thirteenth exceptions, relating to the admission of certain testimony by the witness, Sturkey, and the thirteenth and fourteenth exceptions, relating to the admission of certain testimony by the witness, Stilwell, must be overruled. The ground of objection stated in the exception was not presented to the trial Court, and the testimony was of the character which has already been considered as not varying the terms of the written contract, but merely referring to negotiations leading to the contract and consistent therewith, and to the circumstances surrounding the transaction.

3. The charge to the jury in reference to the law governing the fixing of damages for breach of contract. Exceptions sixteen to twenty-seven, inclusive, relate to this sub-

ject.  The Court explicitly instructed the jury in accordance
with the rule stated in *Sitton* v. *McDonald, supra.*  At de-
fendant's request the jury were charged as follows: "The
rule in this State for fixing damages in cases like
this one now being tried is as follows: First. That
damages which may fairly and reasonably be consid-
ered as naturally arising from a breach of contract, accord-
ing to the usual course of things, are always recoverable.
Second.  That damages which would not arise in the usual
course of things from a breach of contract but which do arise
from circumstances peculiar to the special case are not re-
coverable, unless the special circumstances are known to the
person who has broken the contract."  "In this case, the de-
fendant sets up for a discount on plaintiff's cause of action,
and also as a counter-claim, a demand for damages arising
out of an alleged breach of contract, and the jury are in-
structed that in measuring damages they are limited to such
damages as arise *ex contractu,* and cannot resort to the rule
in cases of tort."  "In measuring damages arising out of
cases *ex contractu,* there are these rules which the jury are
bound to observe, to wit: (1) That damages which may
fairly and reasonably be considered as naturally arising from
a breach of contract according to the usual course of things
are recoverable.  (2) That for a breach of contract parties
are liable only for such consequential losses as may reason-
ably be presumed to have been in contemplation of the par-
ties at the time of making the contract.  (3) That damages
which would not arise in the usual course of things from a
breach of contract and which do arise from circumstances
peculiar to the special case are not recoverable, unless the
special circumstances are known to the person who has
broken the contract.  (4) That if the parties were injured
by their own carelessness or want of diligence, they cannot
claim damages."  The jury were further instructed, "That
mere knowledge will not increase the damages recoverable
for consequential losses, but the knowledge must be brought
home to the party sought to be charged under such circum-

stances, that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it—it must be inferred from the whole contract that the party sought to be charged consented expressly or impliedly to become liable for special damages, before he can be so charged." "Liability for damages arising out of causes of action founded upon contracts must be founded upon consent, express or implied."

After the foregoing, plaintiff preferred many requests to charge, which were not refused but charged with a modification, and numerous exceptions under this head are made. We can only take time to give examples of the exceptions as typical of the class to which they belong. The nineteenth exception is as follows: "19. Because his Honor erred in refusing to charge the plaintiff's sixth request to charge, as follows: 'That even if the jury should find in this case that it was in contemplation of the parties that the defendant should purchase seed with a view to beginning manufacturing upon the arrival of the machinery, still, if they should conclude that the contract was breached on the 15th day of September, 1899, such agreement would not justify the defendant in continuing to purchase seed after knowledge of the breach of contract; and if he continued to purchase seed thereafter, knowing of such breach, and such purchased seed became heated and spoiled, damages thereto would be the result of the defendant's acts, and could not be set up against the plaintiff herein to reduce the amount of his claim,' and erred in charging such request with the modification, 'Unless their conduct was induced by the acts or words of the plaintiff.' The said charge as modified being erroneous in that: (a) no words or acts of the plaintiff at the time of making the contract or before its breach are sufficient to make him liable for damages resulting from acts of the defendant subsequent to the breach, and knowledge by the defendant of it; (b) no words or acts of the plaintiff subsequent to the breach not constituting a new contract or a modification of the old one, which is not alleged, are sufficient to make plain-

tiff liable for the acts of the defendant subsequent to the breach; (c) because there is no evidence of any acts or words of the plaintiff inducing the defendant to purchase seed after the breach of the contract, and the said charge is erroneous in that it is responsive to the pleadings and evidence." Now, it cannot be properly said that there was no testimony in the case tending to show that it was in the contemplation of the parties that defendant would continue to buy and store cotton seed for the use of the mill so long as there was a reasonable expectation that plaintiff would deliver the machinery. The opportunity for buying cotton seed would not ordinarily arise before September 1st, the beginning of the cotton season, when seed would begin to be put upon the market, and as matter of fact defendant purchased the first lot of seed about September 12th. On the 30th of September the machinery not having arrived, defendant telegraphed plaintiff about it, and received reply stating that it would be two or three weeks before machinery could be shipped. On November 18th, plaintiff wrote defendant stating that plaintiff's man would be at McCormicks soon to erect the machinery, and on the 22d day of November a carload of the machinery was shipped, and sometime afterwards plaintiff began erecting the machinery, completing the same in January, 1900. This surely was some evidence to show that as reasonable men, with ordinary knowledge of the cotton seed oil business and the methods of securing material for manufacture, both parties had in contemplation that defendant would during this period buy and store cotton seed for its business. Under this view, the buying of seed after the 15th September and while the contract was being executed, was as much within the contemplation of the parties as it was before that time. The modification of plaintiff's request was doubtless made in view of these circumstances, calculated to induce defendant to buy seed after the breach of the contract by plaintiff.

Appellant's eighth, tenth and nineteenth requests to charge were as follows:

"Eighth. That if the jury believe that by a moderate expenditure the McCormick Cotton Oil Co. could have prevented the alleged damages in this case by moving the seed, it was his duty so to do, and if the losses alleged in this case arose from want of proper attention to the seed alleged to have been bought, then plaintiff is not liable."

"Tenth. That if the defendant, the McCormick Cotton Oil Co., could have sold on 15th of September any of the cotton seed alleged to have been purchased in this case, if there was a market for them, where they could have been sold without loss, and the defendant knew, or ought to have known, that the seed were about to heat and spoil, and become thereby damaged, it was the duty of the said defendant to sell and dispose of the said seed and save itself from loss and damages, and if it failed to do so, it cannot now claim damages against the plaintiff in this action, nor a set-off against his claim."

"Nineteenth. That if the jury find from the evidence that the McCormick Cotton Oil Co. at a moderate cost could have procured an additional warehouse wherein they might have stored a portion of the cotton seed alleged to have been bought in this case, and so as to have given room and opportunity to air said cotton seed, and to save them from damage by proper attention, and that instead of so doing it crowded large quantities of seed into a warehouse where they could not be properly cared for, and that such seed damaged for a want of proper care and attention, the McCormick Cotton Oil Co. must bear the loss, and no damages caused thereby can be charged against the plaintiff. Hall on Damages."

Each of these requests were charged with the words added, "unless their conduct in the matter was induced by the acts or words of the plaintiffs." Appellant has several exceptions to these modifications of the requests to charge, the specifications of error being as follows:

"(a) It is the duty of the claimant to use all proper efforts to make his damages as light as possible, and no acts or words of the other party will relieve him (it) of such duty.

. "(b) The effect of such charge was to abrogate the rule of due care and reasonable diligence on the part of the complainant, whenever there has been a breach of contract by the other party.

. "(c) There was no evidence of any acts or words on the part of the plaintiff inducing the defendant not to move his seed or to do other acts to prevent damages, and said charge was erroneous in that it was not responsive to the pleadings and evidence."

. The rule is well established that where a party is entitled to the benefit of a contract and can save himself from a loss arising from a breach of it with reasonable expense or exertions, it is his duty to do so, and he can charge the delinquent for such damages only as he could not prevent with such reasonable expense or exertion. *Warren* v. *Stoddart,* 15 Otho, 224, 26 Lawyer's ed., 1120; *Wright* v. *Bank,* 110 N. Y., 237, 6 Am. St. Rep., 356, and note. But we do not understand the charge as violating this principle. The jury, as already stated, were instructed that defendant could not recover for damages resulting from its own negligence, and under this instruction it was the duty of the jury to consider what damages resulted from plaintiff's breach of contract, and not what damages resulted from defendant's own negligence thereafter. Whether the circumstances, to which allusion has already been made, were such as to justify a reasonable and prudent person in storing and holding cotton seed in the manner done by defendant in expectation of their use in the oil mill about to be erected, was a question for the jury. If there was nothing in the testimony to show that the conduct of defendant with reference to storing and holding the seed was induced by the words or acts of plaintiff, the modification was harmless; if there was some evidence thereof, the modification was correct. Without further comment, we think all these exceptions to the charge must be overruled.

4. Refusal of motion for a new trial. It is excepted that the Court erred in refusing the motion for a new trial made

upon the grounds that the verdict is not responsive to the pleadings, and that there is no evidence to sustain it. It is well established that it is error of law to refuse to grant a new trial when there is absolutely no evidence upon which to base the verdict. To this end only do we consider the testimony. The plaintiff's claim stood practically admitted by the answer, which only denied that the interest began on the 15th September, 1899, and alleged that interest did not begin until the arrival of the machinery, and denied that plaintiff is still the owner and holder of the claim. It stood admitted, therefore, that plaintiff had delivered the machinery; that the price thereof was $8,000; that defendant had paid thereon, March 20, 1900, $3,000; March 26, 1900, $509.21; March 16, 1900, $2,750; making $6,259.21 total credits. The balance, therefore, which was due plaintiff was $1,740.79, without interest. By the written contract, interest at six per cent. was to be paid after maturity of each instalment, which was stipulated to be as follows: $3,000 payable on arrival of machinery at McCormick; $2,500 payable January 1, 1900; $2,500 payable July 1, 1900. The contract also provided for ten per cent. as attorney's fees. The undisputed evidence was that plaintiff was the owner and holder of the claim. Leaving out of consideration the matter of interest and attorney's fees, plaintiff, on the admitted and undisputed facts, was entitled to a judgment for $1,740.79, provided that sum is not to be cancelled in whole or in part by the items of damages set up in the answer by way of defense and counter-claim. These items could only be counted once in the estimate, as the defense and counter-claim are both based upon the same items of damage. Therefore, admitting everything claimed by defendant on these items of damage, which aggregate $1,909.12, the largest verdict which defendant could possibly be entitled to recover against plaintiff would be the excess of $1,909.12 over $1,740.79, and interest on deferred payments. Yet the verdict was for

$726 in favor of defendant. . There is absolutely no evidence to sustain such verdict, and it was error of law to refuse to set it aside and grant a new trial.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.