## 19569

James C. CLONIGER, Respondent, v. Lamar W. CLONIGER, Appellant

(193 S. E. (2d) 647)

604

*Messrs. Melvin L. Roberts,* of York and *Lourie & Draine,* of Columbia, *for Appellant.*

*Messrs. Robinson, McFadden, Moore & Pope,* of Columbia, *for Respondent.*

February 14, 1973.

BRAILSFORD, Justice:

In this controversy between two brothers concerning an alleged oral contract to convey land, the circuit court overruled the defendant's exceptions to the report of the special referee and decreed specific performance. The defendant has appealed on a number of exceptions, which challenge concurrent findings of the referee and circuit judge as to the existence of the contract and the sufficiency of plaintiff's performance thereunder to remove the bar of the Statute of Frauds and assign other errors.

The defendant also appeals from an interlocutory order overruling his demurrer to the complaint for insufficiency of facts, in that, quoting from the demurrer, "it does not properly allege facts to make out an enforceable contract to convey land." Since the demurrer fails to distinctly specify the grounds of objection to the complaint, as is required by Section 10-643, Code of 1962,

it was properly overruled. *Pargas of Loris, Inc. v. Heniford,* 254 S. C. 344, 175 S. E. (2d) 391 (1970).

In 1935, plaintiff, James C. Cloniger, moved from Gastonia, North Carolina, to York, South Carolina, where he purchased and took over the operation of a textile business. In 1944, the defendant, Lamar W. Cloniger, joined plaintiff and Flaye T. Cloniger, a third brother who had moved to York several years earlier, in this business. In 1957, plaintiff sold his interest in the textile business to his brothers and went into the construction business, in which he incurred heavy losses. In 1960, he borrowed $107,500.00 from Wachovia Bank and Trust Company of Charlotte, North Carolina, on an open note. When he sought to renew this note, it was discovered that the financial statement which he had furnished was materially erroneous or false. Wachovia refused to renew without security. Plaintiff gave a second mortgage on some 485 acres of land near York and a first mortgage on sixty-one acres. He also pledged one share of stock which he owned in Cloniger Real Estate Company, and his wife pledged ninety-eight shares as accommodation pledgor.[1] Upon receiving this security, the bank renewed the note for two years from August 7, 1961, and waived and relinquished any claim against plaintiff on account of error or misrepresentation in the financial statement. It also agreed not to resort to Mrs. Cloniger's stock without first exhausting all other security.

Plaintiff's construction business continued on its disastrous course, and by January 24, 1963, he was unable to pay his debts or to complete work in progress. On that date he filed a petition in bankruptcy.

Wachovia sent representatives to York to investigate and appraise its collateral. These representatives concluded that the Cloniger Real Estate Stock had no value, and that the bank was going to take a big loss on the loan. Plaintiff and

---

[1] The principal asset of this company was a nine-hole golf course on land contiguous to plaintiff's 485 acres.

his attorney, John M. Spratt, had a more sanguine view of the value of the stock and land and conceived the idea of purchasing the note at a discount, with the ultimate aim of saving the collateral for plaintiff and his wife.

Extensive negotiations by plaintiff and Mr. Spratt with Wachovia on the one hand and with the defendant on the other culminated in the purchase by defendant for $40,-000.00 of plaintiff's note to Wachovia, on which the balance due was $124,098.00, and the assignment to defendant of the stock and mortgage by which the note was secured. The defendant promptly turned the stock over to Mr. Spratt for delivery to plaintiff and his wife.

Looking toward the sale of the real estate by the trustee in bankruptcy, Mr. Spratt secured the agreement of the Federal Land Bank, the first mortgagee, that the land be sold subject to its lien, provided that the purchaser pay delinquent installments amounting to about $22,000.00.

At the well advertised and attended sale, held on January 22, 1965, at York County Courthouse, the defendant bid in the property for some $129,500.00, which represented the amount due on the Wachovia note, for which he received credit, and about $5,500.00 for delinquent taxes assessed against the land.

The foregoing facts are virtually undisputed. It is also undisputed that defendant's intervention was solicited by plaintiff and Mr. Spratt. The lamentable discord between the brothers is as to the terms upon which he intervened.

Plaintiff testified that when the opportunity to purchase the Wachovia note and mortgage for $40,-000.00 arose, the defendant agreed to buy them as a means of helping plaintiff regain his land after its sale by the trustee in bankruptcy. According to plaintiff, the defendant agreed to bid for the land up to the full amount due on the note, and make other advances necessary to hold the land for plaintiff until such time as plaintiff could reimburse him in full for all costs incurred in acquiring and

holding title to the land, with interest on such advances at the rate of six per cent. per annum, whereupon defendant would convey the land to plaintiff. Plaintiff's testimony is corroborated by that of Mr. Spratt and of his secretary. A statement of account and accompanying memorandum prepared by defendant and delivered to Mr. Sprat on November 15, 1968, also tend to corroborate it. The referee and circuit judge found further corroboration in other documentary evidence, and we agree.

The defendant denied having made any such agreement. While his testimony is corroborated to some extent by that of his brother, Flaye Cloniger, with whom he is associated in the textile business, the testimony of both is to some extent inconsistent with defendant's verified answer and counterclaim.

A more detailed review of the evidence on this point would serve no useful purpose. Suffice it to say that we agree with the concurrent findings below, quoting from the decree, "that plaintiff has carried the burden of proving the parol contract by evidence which is clear, specific, definite, cogent and convincing," as is required in such cases. *Aust v. Beard*, 230 S. C. 515, 96 S. E. (2d) 558 (1957).

The defendant argues that the agreement as testified to by plaintiff is too vague and indefinite as to time for performance and price to support specific performance. True, the agreement that plaintiff would repurchase the property when he became able failed to specify a time for performance. However, in such cases the law implies that it shall be done within a reasonable time, which is sufficient. *McMillan v. McMillan*, 77 S. C. 511, 58 S. E. 431 (1907); *Martin v. La Boon*, 116 S. C. 97, 107 S. E. 320 (1921).

As to price, under the well-settled rule the contract need only provide a means by which the consideration may be ascertained. *Foard v. Snider*, 205 Md. 435, 109 A. (2d) 101 (1954), is on all fours. There, a grantee agreed to reconvey to his grantor for a price equal-

ling all expenditures with respect to the land made by the grantee. The court held that this price was not too indefinite, since it left nothing to the parties' discretion and was a mere mathematical computation. Here, the referee computed the price and it appears to be a proper resolution of the parties' differences. In fact, no exception has been taken to this aspect of the decree which adopted the referee's computation. There is nothing so indefinite about the agreement as to either time or the price as to justify denial of specific performance.

Defendant also argues that the court erred in ordering specific performance, because plaintiff admitted that he did not have the funds on hand to pay the amount due defendant, and would require twenty-four hours' notice to raise it. Finding no merit, we overrule, without discussion, this contention, which does not appear to have been raised by an exception.

Defendant further contends that any agreement to reconvey the land to plaintiff, quoting from the answer, "would not constitute a valid contract because of an absence of any valuable consideration to the Defendant." Assuming, without deciding, that defendant's promise to reconvey the land to plaintiff when plaintiff should become able to repay the amounts expended by defendant, with interest on said sums, could have been withdrawn at any time before acceptance by plaintiff, that is not this case. Here, defendant's promise to reconvey was a continuing offer which was accepted by plaintiff within a reasonable time and before it had been withdrawn. Therefore, there is no need, as in the case of an potion, to find a consideration for holding the offer open. Upon acceptance, plaintiff's promise to pay according to the terms of the offer was undoubtedly sufficient consideration for defendant's promise to reconvey. Furthermore, the circuit court found that plaintiff had actually tendered performance, and the defendant took no exception to this finding. On the question of the suffi-

ciency of the consideration, it is wholly immaterial that the defendant will not profit from the execution of the contract.

The facts found by the referee and circuit judge to support their conclusion that plaintiff's cause of action is not barred by the Statute of Frauds are sufficient in law [2] and are virtually undisputed in fact. We quote the following summary from the decree:

"Following defendant's acquisition of title to the property, plaintiff rented houses thereon and kept the rentals, painted and repaired the houses and barns, operated an airfield or landing strip upon the property, built fences around the property and, in addition, expended approximately $65,-000.00 in constructing (the second) nine holes of a golf course upon the property, all with the knowledge of defendant, and without objection from him."

Some five pages of appellant's brief argue that the court erred in not holding that Mr. Spratt and his secretary were disqualified as witnesses because of the relationship of attorney and client formerly existing between the defendant and Mr. Spratt. The claim is wholly without merit for a number of reasons. Suffice it to say that counsel simply made a blanket objection to the witnesses' testimony. Even where the relationship of attorney and client does exist, which was found not to be the case here, only confidential communications are protected by the privilege. Neither Mr. Spratt nor his secretary testified to any disclosure by the defendant which could be regarded as confidential, and no objection was made to any specific testimony on this ground. See 58 Am. Jur., Witnesses, Sec. 496 (1948); *Moffat v. Hardin,* 22 S. C. 9 (1884); Annot., 141 A. L. R. 553, 554 (1942).

Defendant's answer also alleges that if there was an agreement to reconvey, such agreement was a fraud on the bankruptcy court, and plaintiff should be

---

[2] See Restatement of Contracts, Sec. 197 (1932); Annot., 101 A. L. R. 923 (1936); *Scurry v. Edwards,* 232 S. C. 53, 100 S. E. (2d) 812 (1957).

barred of relief in equity under the clean hands doctrine. We agree with the circuit court that this transaction was not affected by fraud on the bankrupt's creditors. Certainly none can be claimed by Wachovia, which made an arm's length decision as to the value of its collateral and knowingly sold its note to the bankrupt's brother at a tremendous discount. Nor have the bankrupt's general creditors any ground for complaint. By his purchase, the defendant simply stepped into Wachovia's shoes without worsening their lot. Nor can they complain if the bankrupt acquired a contract right in this property after the filing of his petition in bankruptcy. It is well settled that a bankrupt's property subject to the claims of his creditors is fixed as of the day of the petition, and after-acquired property, such as this contract right, is not so subject. 9 Am. Jur. (2d), Bankruptcy, Sec. 866 (1963).

Defendant argues under three separate questions that the referee and circuit judge erred in attaching special significance to defendant's note and statement of account of November, 1968, to a conveyance by defendant of a small parcel of property to plaintiff's wife and to defendant's failure to list the land in question, or the Federal Land Bank debt, on financial statements filed by him with the Bank of York. The documents referred to were relevant and properly admitted into evidence. We find no merit in the claim that undue significance was attributed to them.

Two of the remaining three questions argued in the brief relate, respectively, to the disallowance of defendant's counterclaim for rent, and to the assessment of costs in favor of plaintiff. Both contemplate a favorable decision on the merits and are resolved against defendant by our contrary conclusion. The third question relates to the refusal of the referee to reopen the case to take testimony with regard to the alleged addition of a notation on a $750.00 check after it had cleared the bank. We find no error, and no possibility

that the result could have been affected by the ruling complained of.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.