296 S.C. 207 (1988)
371 S.E.2d 532
The DREWS COMPANY, INC., Appellant
v.
LEDWITH-WOLFE ASSOCIATES, INC., Respondent.
22904
Supreme Court of South Carolina.
Heard June 8, 1988.
Decided August 29, 1988.
*208 William H. Vaughan, Jr., and Francis L.P. Barnwell of Vaughan, Robson, Barnwell & Lawrence, Charleston, for appellant.
W.H. Bundy, Jr., Charleston, for respondent.
Heard June 8, 1988.
Decided August 29, 1988.
HARWELL, Justice:
This case involves the breach of a construction contract. We affirm the trial court's refusal to grant a new trial, but reverse the jury's award of lost profits.

FACTS
The Drews Company, Inc. ("Contractor") contracted to renovate a building owned by Ledwith-Wolfe Associates, Inc. ("Owner"). Owner intended to convert the building into a restaurant. From its inception, the project was plagued by construction delays, work change orders, and general disagreement over the quality of work performed. Contractor eventually pulled its workers off the project. Contractor later filed, then sued to foreclose, a mechanic's lien for labor and materials used in renovating the building. Owner counterclaimed, alleging Contractor breached the contract and forced Owner to rework part of the job. Owner also claimed that Contractor's delays in performance caused Owner to lose profits from the restaurant.
The jury returned an $18,000 verdict for Contractor on its complaint. The jury awarded Owner $22,895 on its counterclaim for re-doing and completing the work and $14,000 in lost profits caused by Contractor's delays. The trial judge denied Contractor's new trial motion and awarded Owner attorney's fees and costs pursuant to S.C. Code Ann. § 29-5-10 (Supp. 1987) (mechanics' liens).

*209 A.
Contractor first argues that the trial court erred in admitting evidence of Owner's "delay damages" because the contract contained no completion date or statement that "time was of the essence." We disagree.
A contractor may be liable for delay damages regardless of whether time was of the essence of the contract. 17A C.J.S. Contracts § 502(4)(a) (1963). Where a contract sets no date for performance, time is not of the essence of the contract and it must be performed within a reasonable time. General Sprinkler Corp. v. Loris Industrial Developers, Inc., 271 F. Supp. 551, 557 (D.S.C. 1967); see Davis v. Cordell, 237 S.C. 88, 115 S.E. (2d) 649 (1960) (applying "reasonable time" rule to time for payment under contract); Cloniger v. Cloniger, 261 S.C. 603, 193 S.E. (2d) 647 (1973) (applying "reasonable time" rule to agreement to repurchase property within an unspecified time); Smith v. Spratt Machine Co., 46 S.C. 511, 24 S.E. 376 (1896) (where manufacturing contract specified no time for performance, "reasonable time" implied); see also 17A C.J.S. Contracts § 503(a)(1) (1983) ("reasonable time" for performance will be implied where no time therefor is fixed in building or construction contract). The timeliness of Contractor's performance here was a disputed factual issue properly reserved for jury determination.

B.
Contractor's next exception presents this Court with an opportunity to address a legal issue unsettled in South Carolina: Does the "new business rule" operate to automatically preclude the recovery of lost profits by a new business or enterprise? We hold that it does not.
1. Lost Profits In South Carolina
We begin our analysis of the lost profits issue by recognizing an elementary principle of contract law. The purpose of an award of damages for breach is "to give compensation, that is, to put the plaintiff in as good a position as he would have been in had the contract been performed." 11 S. WILLISTON, A TREATISE ON THE *210 LAW OF CONTRACTS, § 1338 (3d ed. 1968). The proper measure of that compensation, then, "is the loss actually suffered by the contractee as the result of the breach." South Carolina Finance Corp. v. West Side Finance Co., 236 S.C. 109, 122, 113 S.E. (2d) 329, 335 (1960).
"Profits" have been defined as "the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them." Restatement of Contracts § 331, Comment B (1932); see Mali v. Odom, 295 S.C. 78, 367 S.E. (2d) 166 (Ct. App. 1988) (defining "profits" as the net of income over expenditures during a given period). Profits lost by a business as the result of a contractual breach have long been recognized as a species of recoverable consequential damage in this state. Hollingsworth on Wheels, Inc., v. Arkon Corp., 279 S.C. 183, 305 S.E. (2d) 71 (1983); South Carolina Finance Corp. v. West Side Finance Co., supra. The issue is more difficult, however, when a new or unestablished business is the aggrieved party seeking projected lost profits as damages.
The new business rule as a per se rule of nonrecoverability of lost profits was firmly established in this state in Standard Supply Co. v. Carter & Harris, 81 S.C. 181, 187, 62 S.E. 150, 152 (1907): "When a business is in contemplation, but not established or not in actual operation, profit merely hoped for is too uncertain and conjectural to be considered." McMeekin v. Southern Ry. Co., 82 S.C. 468, 64 S.E. 413 (1909), like Standard Supply Co., involved profits allegedly lost when a carrier failed to deliver machinery necessary for a new mill enterprise. The Court adhered to a strict application of the rule, stating that "[t]he plaintiff's business had not been launched, and therefore he could not recover profits he expected to make." Id. at 473, 64 S.E. at 415; cited in Currie v. Davis, 130 S.C. 408, 126 S.E. 119 (1923) (new business rule applied to prelude recovery of lost profits where carrier's tort against passenger delayed production by passenger's cotton gin "not yet in active operation").
Modern cases, however, reflect the willingness of this Court and our Court of Appeals to view the new business rule as a rule of evidentiary sufficiency rather than an automatic bar to recovery of lost profits by a new business. See Hollingsworth on Wheels, Inc. v. Arkon Corp., supra *211 (holding that while aggrieved buyer's projections of lost profits from new business enterprise introduced unreasonable amount of uncertainty into damages computation, evidence sufficient to permit Court itself to reach reasonable figure for profits lost); Bryson v. Arcadian Shores, Inc., 273 S.C. 471, 257 S.E. (2d) 233 (1979) (evidence of room revenues allegedly lost by hotel as result of construction delay held speculative and insufficient to allow recovery); Mali v. Odom, supra (attorney malpractice action  estimates of anticipated monthly income from new school held speculative and without reasonable basis where offered without reference to operational history or standard method for estimations); Petty v. Weyerhaeuser Co., 288 S.C. 349, 342 S.E. (2d) 611 (Ct. App. 1986) (tort action  three month period business operated prior to debilitating effect of tort afforded basis for fairly and reasonably approximating lost profits). These cases have so eroded the new business rule as an absolute bar to recovery of lost profits that the rigid Standard Supply Co., rule is no longer good law.
2. A Multi-Jurisdictional Trend.
South Carolina has not been alone in developing its evidentiary view of the new business rule. Numerous authorities and commentators have tracked a similar trend nationwide: "Courts are now taking the position that the distinction between established businesses and new ones is a distinction that goes to the weight of the evidence and not a rule that automatically precludes recovery of profits by a new business." D. Dobbs, HANDBOOK ON THE LAW OF REMEDIES, § 3.3, at 155 (1973). See R. Dunn, RECOVERY OF DAMAGES FOR LOST PROFITS, § 4.2 (3d ed. 1987) (trend of modern cases plainly toward replacing old rule of law with rule of evidence  reasonable certainty); Comment, Remedies  Lost Profits as Contract Damages for an unestablished Business: The New Business Rule Becomes Outdated, 56 N.C.L. Rev. 693, 695 (1978) (noting "increasing trend either to create exceptions and mitigating sub-doctrines to the new business rule or simply to recognize that its rationale is no longer persuasive"); Note, The New Business Rule And The Denial of Lost Profits, 48 Ohio St. L.J. *212 855, 859 (1987) (clear and growing majority of courts apply new business rule as rule delimiting sufficiency of evidence.) Moreover, application of the rule in this manner has been applauded as fairer than mechanical application of the old rule. See D. Dobbs, supra (as a matter of evidence, new business/established business distinction makes sense; as a matter of setting an inflexible rule, it does not); R. Dunn, supra, at 227 (no worthwhile end achieved "by permitting one party to breach his contracts with impunity  giving him an option, as it were  because the other party has not yet commenced operation.").
In light of the facts before us, we find particularly persuasive several cases involving lost profits flowing from breaches of contracts to construct and/or lease building for the operation of new business ventures. See, e.g., Chung v. Kaonohi Center Co., 62 Haw. 594, 618 P. (2d) 283 (1980) (rejecting per se nonrecoverability version of new business rule in favor of "reasonable certainty" evidentiary standard; lost profits award upheld for breach of contract to lease space for new restaurant), Welch v. U.S. Bancorp Realty and Mortgage, 286 Or. 673, 596 P. (2d) 947 (1979) (breach of contract to advance funds for residential and commercial development on land tract; "reasonable certainty" standard applied); Fera v. Village Plaza, Inc., 396 Mich. 639, 242 N.W. (2d) 372 (1976) (breach of lease of shopping center space for new book store; per se rule of nonrecoverability rejected in favor of broad jury discretion in lost profits determinations); Smith Dev. Corp. v. Bilow Enterprises, Inc., 112 R.I. 203, 308 A. (2d) 477 (1973) (tortious interference with contractual right to erect "McDonald's" restaurant; "reasonable certainty" rule applied and per se new business rule rejected); S. Jon Kreedman & Co. v. Meyer Bros. Parking-western Corp., 58 Cal. App. (3d) 173, 130 Cal. Rptr. 41 (1976) (breach of contract to construct parking garage and lease it to operator; "hard and fast" new business rule rejected in favor of "reasonable certainty" test).
We believe South Carolina should now unequivocally join those jurisdictions applying the new business rule as a rule of evidentiary sufficiency and not as an automatic preclusion to recovery of lost profits by a new business or enterprise.
*213 3. The Standard for Entitlement to Lost Profits.
The same standards that have for years governed lost profits awards in South Carolina will apply with equal force to cases where damages are sought for a new business or enterprise. First, profits must have been prevented or lost "as a natural consequences of" the breach of contract. South Carolina Finance Corp. supra, at 122, 113 S.E. (2d) at 335; Charles v. Texas Co., 199 S.C. 156, 180, 18 S.E. (2d) 719, 729 (1942) (lost profits are proper elements of damages where they are "direct and necessary result" of defendant's breach).
The second requirement is foreseeability; a breaching party is liable for those damages, including lost profits, "which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was made as a probable result of the breach of it." National Tire & Rubber Co. v. Hoover, 128 S.C. 344, 348, 122 S.E. 858, 859 (1924); see also Traywick v. Southern Ry. Co., 71 S.C. 82, 50 S.E. 549 (1905); Colvin v. McCormick Cotton Oil Co., 66 S.C. 61, 44 S.E. 380 (1902); Sitton v. MacDonald, 25 S.C. 68, 60 Am. Rep. 484 (1885) (lost profits cases citing the "knowledge of special circumstances" rule of Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 154 (1854)).
The crucial requirement in lost profits determinations is that they be "established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative." South Carolina Finance Corp., supra, at 122, 113 S.E. (2d) at 336. "The proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn." 22 Am. Jur. (2d) Damages § 641 (1988).
Numerous proof techniques have been discussed and accepted in different factual scenarios. See, e.g., Upjohn v. Rachelle Laboratories, Inc., 661 F. (2d) 1105, 1114 (6th Cir.1981) (proof of future lost profits based on marketing forecasts by employees specializing in economic forecasting); Petty v. Weyerhaeuser Co., supra (skating rink's projected revenues compared to those of another arena in a nearby town); see also Restatement (Second) of Contracts § 352, at *214 146 (1981) (proof of lost profits "may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like."); Note, supra, 48 Ohio St. L.J. at 872-3 (means of proving prospective profits include (1) "yardstick" method of comparison with profit performance of business similar in size, nature, and location; (2) comparison with profit history of plaintiff's successor, where applicable; (3) comparison of similar businesses owned by plaintiff himself, and (4) use of economic and financial data and expert testimony). While the factual contexts in which new business/lost profits cases arise will undoubtedly vary, these methods of proof and the "reasonable certainty" requirement bear an inherent flexibility facilitating the just assessment of profits lost to a new business due to contractual breach.
4. Application of the Standard to the Present Facts
Applying this standard to the facts before us, we find that Owner's proof failed to clear the "reasonable certainty" hurdle. Owner's projections of the profits lost by the restaurant because of the breach were based on nothing more than a sheet of paper reflecting the gross profits the restaurant made in the first 11 months of operation after construction was completed. These figures were not supplemented with corresponding figures for overhead or operating expenditures, but only with Owner's testimony that he "would expect at least a third of that [gross figure] to be" net profit. Owner's expectations, unsupported by any particular standard or fixed method for establishing net profits, were wholly insufficient to provide the jury with a basis for calculating profits lost with reasonable certainty. South Carolina Finance Corp., supra; Mali v. Odom, supra.
The trial judge erred in failing to rule that, as a matter of law, Owner's proof was insufficient to merit submission to the jury. The $14,000 award of lost profits must therefore be reversed.

C.
Contractor's remaining exceptions are disposed of pursuant to Supreme Court Rule 23. See Talley v. South Carolina *215 Higher Education Tuition Grants Committee, 289 S.C. 483, 347 S.E. (2d) 99 (1986) (issue neither presented to nor ruled upon by trial court not preserved for appeal); Reid v. Hardware Mutual Insurance Co., 252 S.C. 339, 166 S.E. (2d) 317 (1969) (questions not raised by proper exception will not be considered); Supreme Court Rule 8, § 3; Howell v. Pacific Columbia Mills, 291 S.C. 469, 354 S.E. (2d) 384 (1987) (exceptions not argued in brief deemed abandoned on appeal).
Costs and attorneys' fees under Supreme Court Rule 38 shall be assessed against appellant.
Affirmed in part; reversed in part.
GREGORY, C.J., and CHANDLER, FINNEY and TOAL, JJ., concur.