881 F.2d 1069
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert M. NEWSOM, Jr., Plaintiff-Appellee,
v.
Ted GOMILLION, individually and as agent, servant, and/or
employee of Gomillion Sound, Inc., d/b/a Gomillion
Studios, Defendant-Appellant.
 No. 88-1711.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 6, 1989.
Decided July 26, 1989.
Rehearing Denied Aug. 21, 1989.
 
 Howard P. King (Terrell T. Horne, Bryan Law Firm on brief) for appellant.
 James Edward Bell, III (Bell and Bagley Law Firm on brief) for appellee.
 Before CHAPMAN and WILKINS, Circuit Judges, and N. CARLTON TILLEY, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Ted Gomillion appeals from a $1,000,000.00 judgment entered on a jury verdict in favor of Robert Newsom for breach of contract. We affirm.
 
 I.
 
 2
 In 1974 Newsom, who had previous experience in the movie industry, began to work toward his dream of building a movie production facility in South Carolina. Over the next decade he expended considerable time and money pursuing this project. In 1981 Newsom met Gomillion, a movie producer who owned a studio in Hollywood, California. When Newsom and Gomillion met again in September 1985, Newsom explained his dream to Gomillion, and Gomillion was interested in the idea. They therefore proposed to form a company in which they would each hold a 40 percent interest, a third party would hold ten percent, and the remaining ten percent would be reserved for a future participant. Although such a company was never formally organized, Newsom and Gomillion remained in contact and continued pursuing the creation of a movie studio in South Carolina. However, unknown to Newsom, Gomillion decided to pursue the idea alone by forming a wholly-owned, South Carolina corporation named Gomillion Studios South.
 
 
 3
 Gomillion located a site for his facility and procured architectural drawings. He also prepared a pro forma projection that anticipated profits of $800,000.00 in the corporation's second year of operation and more than $6,000,000.00 in its fourth year. In addition, he recruited movie industry people to use his facility once completed.
 
 
 4
 Meanwhile, Newsom, acting under the assumption that Gomillion's efforts were for the benefit of their joint project, secured approval of the United States Internal Revenue Service for the issuance of industrial revenue bonds to finance building a movie studio in South Carolina. When Newsom notified Gomillion of the bond approval, Gomillion informed Newsom he would pay him $100,000.00 or a five percent interest in Gomillion Studios South, if he elected to have the bonds issued, as compensation for Newsom's efforts.
 
 
 5
 Newsom rejected Gomillion's proposal and filed this action, alleging several causes of action. At trial Newsom testified that he had knowledge of the financial aspects of the movie business and that his efforts in establishing the facility were worth in excess of $1,000,000.00. He also testified that his out-of-pocket expenses exceeded $100,000.00. Gomillion did not challenge either of these amounts. Newsom also presented as evidence Gomillion's pro forma profit projection and the letter offering him $100,000.00 or five percent of Gomillion Studios South for his work on the bond approval. The district court submitted the breach of contract claim to the jury which returned a verdict for Newsom in the amount of $1,000,000.00. Gomillion then moved for judgment notwithstanding the verdict, or in the alternative for a new trial, arguing that the damages awarded were excessive and without foundation. The district court denied the motion, finding that the evidence was sufficient to support the amount of the award with reasonable certainty.
 
 II.
 
 6
 Gomillion contends that the evidence Newsom presented was insufficient to support the verdict. Appellate review of a judgment entered on a jury verdict is limited to a determination of "whether, when viewed in the light most favorable to the prevailing party, the record contains substantial evidence to support the jury's finding." Entre Computer Centers, Inc. v. FMG of Kansas City, Inc., 819 F.2d 1279, 1283 (4th Cir.1987).
 
 
 7
 Under South Carolina law, lost profits from a new business are recoverable, but they must "be 'established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative.' " Drews Co. v. Ledwith-Wolfe Associates, Inc., 296 S.C. 207, 213, 371 S.E.2d 532, 535-36 (S.C.1988) (quoting South Carolina Finance Corp. v. West Side Finance Co., 236 S.C. 109, 122, 113 S.E.2d 329, 336 (1960)).
 
 
 8
 'The proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn.'
 
 
 9
 Id. at 536 (quoting 22 Am.Jur.2d Damages Sec. 641 (1988)).
 
 
 10
 Gomillion conceded that Newsom suffered damages and was entitled to a verdict in some amount. He challenged only the sufficiency of proof as to the amount of the damages. However, Gomillion's pro forma projection established that Gomillion believed a South Carolina movie studio could generate millions of dollars in profits within the first several years. Moreover, the letter Gomillion sent Newsom showed that he believed Newsom's efforts in procuring the bond approval alone were worth at least $100,000.00. This evidence sufficiently supports the jury verdict when Newsom is given "the benefit of all reasonable inferences from the evidence." Hill v. BASF Wyandotte Corp., 782 F.2d 1212, 1213 (4th Cir.1986). The district court did not abuse its discretion in denying Gomillion's post-trial motions.
 
 
 11
 AFFIRMED.