200 Cal.App.2d 708 (1962)
Estate of ARTHUR LETTS, JR., Deceased. DAVID LETTS et al., Petitioners and Appellants,
v.
CLAREMONT COLLEGE, Claimant and Respondent.
Civ. No. 25626. 
California Court of Appeals. Second Dist., Div. Two. 
Feb. 26, 1962.
 Kenyon F. Lee for Petitioners and Appellants.
 O'Melveny & Myers, Pierce Works, Bennett W. Priest and Allyn O. Kreps for Claimant and Respondent.
 FOX, P. J.
 Petitioners instituted this proceeding to determine their rights in the estate of Arthur Letts, Jr., pursuant to Probate Code section 1080. The trial court having determined that they have no rights whatsoever, they bring this appeal.
 On June 15, 1959, Arthur Letts, Jr., executed his will and on June 18 of the same year his codicil thereto. Having made certain specific gifts and having set up a trust, the income of which was to go to his widow, he left the rest of his estate to Claremont College, specifically disinheriting his two adopted children who are the petitioners herein. Less than 30 days later, on July 14, the decedent passed away, leaving his widow and the petitioners as his only heirs at law.
 Petitioners base their claim on the mortmain provisions of section 41 of the Probate Code which reads, in part: "No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, ... descendant or ancestor surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. ... All property bequeathed or devised *710 contrary to the provisions of this section shall go to the spouse, ... descendant or ancestor of the testator, if and to the extent that they would have taken said property as aforesaid but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected."
 Respondent, Claremont College, seeks to uphold its claim to the gifts under the will by reference to section 42 of the Probate Code. That section provides that "Bequests and devises to ... any educational institution which is exempt from taxation under section 1a of Article XIII ... of the Constitution of this State and statutes enacted thereunder, or for the use or benefit of any such educational institution, ... are excepted from the restrictions of this article [of which 41 is a part]."
 [1] Section 1a of article XIII of the Constitution provides that "Any educational institution of collegiate grade, within the State of California, not conducted for profit, shall hold exempt from taxation its buildings and equipment, its grounds within which its buildings are located, not exceeding 100 acres in area, its securities and income used exclusively for the purposes of education." Revenue and Taxation Code section 203 was enacted to define and to implement the foregoing provision. After defining "an educational institution of collegiate grade" the section reads: "An educational institution of collegiate grade is not conducted for profit when it is conducted exclusively for scientific and educational purposes and no part of its net income inures to the benefit of any private person." The trial court found that "On and prior to July 14, 1959, said date being the date of death of said decedent, Arthur Letts, Jr., claimant Claremont College was an educational institution of collegiate grade, within the State of California, not conducted for profit, which was then and there (1) exempt from taxation under Section 1a of Article XIII of the Constitution of the State of California and statutes enacted thereunder including Section 203 of the Revenue and Taxation Code and Section 42 of the Probate Code, and (2) conducted exclusively for scientific and educational purposes and no part of its net income at said time or times inured to the benefit of any private person." This was the principal question decided below and its resolution will be dispositive of this appeal.
 [2a, 3] Whether or not the trial court was correct in this determination hinges upon the question of whether Claremont, *711 by accepting transfers to it of money and other property, in consideration of the issuance by it of annuities and life-income contracts to its donors, who are private persons, has lost its tax-exempt status. [fn. 1]
 The essence of the life-income contracts is that Claremont, in consideration of receiving property, real or personal, from the donors, agrees to pay and does pay to these people, for their lives, the annual income [fn. 2] attributable to each after expenses in handling the properties are deducted. The "net" income from these transfers is, then, without question, distributed to private persons. Under the annuity contracts, Claremont agrees to pay and does pay to the contributors a fixed percentage of the value of the properties transferred to it.
 Under Claremont's bookkeeping system, "Net Income from Investments," i.e., the figure arrived at after deducting ordinary expenses such as brokerage fees, is carried into gross income from which are deducted the general expenses of the institution, including "Annuity and Life Income Payments." Claremont claims that this demonstrates that the net income of the institution is arrived at only after subtracting from gross income the payments made, and this net income is entirely devoted to educational purposes. It is claimed that, therefore, the payments are an expense, paid from gross profits, not net profits inuring to private individuals. It will be recalled that section 203 requires that no part of "its," referring to the educational institution, net income inure to private individuals.
 The bookkeeping labels assigned to the payments of course do not necessarily determine their legal effect. But the approach taken by Claremont seems to be quite realistic. Whether or not a "debtor-creditor" relationship exists between Claremont and the annuitants, a subject of dispute herein, the fact is that Claremont has no choice as to the disposition of these funds but is obligated by contract to distribute them to private individuals. The payments made under these contracts are the principal "cost" involved in acquiring these properties, and may legitimately be called an expense in the traditional sense. The mere fact that at some point in time before distribution of the payments the income is referred to *712 as "net" does not alter the substantive nature of the payments.
 Closely analogous is the case of St. Francis Hospital v. City & County of San Francisco, 137 Cal.App.2d 321 [290 P.2d 275]. The question was whether St. Francis was entitled to the hospital exemption set forth in California Constitution article XIII, section 1c, and Revenue and Taxation Code section 214, subdivision (2). The key language there involved was "no part of the net earnings of which inures to the benefit of any private shareholder or individual." At page 328 the opinion states: "Defendant makes the further contention that plaintiff is disqualified to claim the exemption because, defendant asserts, a 'part of the net earnings of the owner,' plaintiff herein, 'inures to the benefit' of 'private shareholder[s] or individual[s]' ( 214, subd. (2)). This assertion is predicated upon the fact that in 1951 interest was paid upon certain promissory notes which plaintiff issued in 1938 in payment of part of the purchase price of its plant. These notes, dated August 1, 1938, are payable on or before 20 years after date, bear interest at a rate not greater than 4 1/2 per cent per annum, and are payable semiannually from the 'net earnings' of plaintiff as ascertained and determined by plaintiff's board of trustees to be applicable to said interest payments."
 "It seems obvious that we are dealing here with a debtor-creditor relationship. If this debt were in the usual form of an absolute, unqualified obligation to pay 4 1/2 per cent interest per annum, no one would question its payment as a legitimate operating cost, ahead of the ascertainment and declaration of 'net earnings,' a charge and a payment not within the purview of subdivision (2) of section 214. We do not believe that the mere fact that plaintiff negotiated more favorable terms respecting the payment of this particular obligation brings it within the purview and proscription of subdivision (2)."
 Similarly, in our case, there would be no question if Claremont had issued notes in exchange for the transfers. Merely because it negotiated more favorable terms, i.e., it need make payments on the life-income contracts only if the properties transferred show a "net" profit, does not mean that it must lose its tax exemption. It might be noted that St. Francis was obligated to make payments from the "net" earnings of the institution, or net earnings in the more usual sense, rather than merely from earnings of particular properties which exceeded the operating expense of those properties, as is the case here. *713
 The trial court's conclusion and judgment find solid support in section 1a of article XIII of the Constitution and in section 203, Revenue and Taxation Code. As pointed out earlier, the code section, enacted by the Legislature pursuant to the authority of section 13 of article XIII, undertook to define section 1a of article XIII and to implement its application. [4] The financial aspect of the legislative definition of the crucial provision "not conducted for profit" is that "no part of its net income inures to the benefit of any private person." Thus the Legislature has established a criterion by which to determine when an educational institution of collegiate grade is exempt from taxation under section 1a of article XIII and therefore falls within the provisions of section 42 of the Probate Code, rather than within the restrictive provisions of section 41.
 [5] The terms employed by the Legislature must be understood in the context in which they are used. [6] The term "net income" as used in section 203 means distributable profit. [7] The "private person" referred to in section 203 means a person to whom profits would normally be distributable, as in the case of a profit corporation--a stockholder, or in other types of business organizations a person standing in a proprietary relationship to the business. [8] "Profit," according to Webster, is the excess, the net, of income or earnings over expenditures during a given period. As such, it is distributable, in case of a profit operation, to the ownership interest. [9] It is therefore apparent from the foregoing that the language of section 203 is in harmony with the provision "not conducted for profit" in section 1a of article XIII.
 [2b] Applying these principles to the transactions here involved it is clear that the payments to the annuitants and life-income contract holders were made, not by way of distribution of profits to any ownership interest, but to contract creditors who were such by reason of the annuity and life-income contracts they held which Claremont had executed and delivered to them in exchange for the property they had transferred to the college. Upon no theory can these payments be regarded as profits; actually, they represented costs of acquisition--debts.
 [10] In decreeing that Claremont was entitled to take under decedent's will, the trial court properly interpreted and applied section 1a of article XIII of the Constitution, section 203 of the Revenue and Taxation Code and section 42 of the Probate Code and arrived at a correct determination *714 that Claremont College is a nonprofit educational institution of collegiate grade entitled to tax-exempt status. [fn. 3] (St. Francis Hospital v. City & County of San Francisco, supra.)
 [11] This conclusion is fortified by reference to the language of section 11520 of the Insurance Code, which further clarifies the legislative intent that payment of contract obligations by a nonprofit educational institution does not jeopardize its tax-exempt status. That section directly sanctions the issuance of annuities by any educational institution "pecuniary profit not being its object or purpose." [fn. 4]
 There is nothing in Sutter Hospital v. City of Sacramento, 39 Cal.2d 33 [244 P.2d 390], cited by appellants, which is contrary to our decision. In that case the hospital admittedly conducted operations with the purpose of making a profit, and although the profit was devoted to hospital purposes, it was held that "The present form of the statute compels the conclusion that plaintiff's claim for exemption must be denied because of its failure to meet the condition that its property be 'not used or operated ... for profit regardless of the purposes to which the profit is devoted.' " (Rev. & Tax. Code, 214, subd. (3).) Substantially different matters were involved in the context of a substantially different statute.
 Because of the view we take of this proceeding it becomes unnecessary to discuss other points raised.
 The judgment is affirmed.
 Ashburn, J., and Herndon, J., concurred.
NOTES
[fn. 1] 1. The evidence unquestionably supports the conclusion that Claremont is an educational institution as defined by 203.
[fn. 2] 2. This annual income is determined for each fiscal year by multiplying the net value of the gift by the percentage of net income earned the previous fiscal year on the general investment assets of the college.
[fn. 3] 3. It might also be worthy of note that the tax assessor, as of the assessment date preceding this litigation, accorded to Claremont its tax exemption.
[fn. 4] 4. Claremont was duly licensed to issue annuities under that section.