22556

Luther M. RABON, Donna R. Rabon, Jefferson M. Lee, III, and Sherry H. Lee, Appellants-Respondents v. Daryoush J. MALI, Shida K. Mali, Dr. E. Anne Rowley, individually and d/b/a/ New ERA Learning Center, Respondents-Appellants.

(344 S. E. (2d) 608)

Supreme Court

*Marvin P. Jackson, Jr.,* Florence, *for appellants-respondents.*

*James T. McBratney,* Florence, *for respondents-appellants.*

Heard April 18, 1986.

Decided May 27, 1986.

FINNEY, Justice:

The Appellants-Respondents, lot owners in the Lakeside subdivision, brought this action against the Respondents-Appellants, the owners of four lots designated as 48, 49, 50 and 51 in the subdivision, to restrain and enjoin the Respondents-Appellants from operating any type of commercial enterprises on restricted Lots 50 and 51, and to remove the paved parking spaces thereon. The trial court restrained and enjoined the Respondents-Appellants from using any portion of Lots 50 and 51 for commercial purposes, but did not require the removal of the paved parking spaces. We affirm in part and reverse in part.

Both the Appellants-Respondents and the Respondents-Appellants appeal from the order of the trial court. The Appellants-Respondents allege the court erred in not requiring the removal of the paved parking spaces because the paved parking lots are commercial in nature and violate the restrictive covenants. The Respondents-Appellants contend they should be allowed to continue operating their business on a portion of the restricted lots because the Appellants-

Respondents are barred by laches, waiver or estoppel from asserting their rights to enforce the restrictive covenants.

In 1956 Mrs. Nellie Rollins, the original subdivider of the tract of land, executed and recorded restrictive covenants on the property. The covenants provide that the lots in the Lakeside subdivision, except those expressly reserved for commercial purposes, "shall be used exclusively for residential purposes and no building, or buildings shall be erected thereon which is designed to be used for any other purpose."

Mr. Forbes purchased the lots in question and a building thereon from Mrs. Rollins in 1959. Lots 48 and 49 front on Second Loop Road, a busy four (4) lane thoroughfare and are excepted from the residential restrictions. Lots 50 and 51 are located within the subdivision and subject to the residential restrictions. The building encroaches on Lots 48, 49 and a portion of restricted Lot 50.

The evidence shows Forbes used the premises for various businesses and for his residence from 1959 until November 1983. Forbes testified that he used a portion of the building situated on restricted Lot 50 to conduct his businesses. The building is not partitioned off for business and residential use. Forbes operated the Bible Book Shelf from about 1959 to 1966, which grossed approximately eighty thousand ($80,000.00) dollars per year; simultaneously broadcast a local radio program, operated a mutual fund business, and beginning in 1977 until the sale of the property, operated a wholesale and retail food supplement distributorship known as Samana. Deliveries were made, sales consummated and weekly sales meetings were held on the premises. His gross income from Samana was approximately one hundred thousand ($100,000.00) dollars per year.

Forbes advertised his businesses by a sign on the property and by local radio advertisements. It is obvious from the evidence that the residents of the Lakeside subdivision knew of the businesses operated by Forbes and some of the residents were also customers. The Appellants-Respondents Rabons knew of Forbes' commercial activities and, on at least one occasion, purchased some of the Samana product. The Appellant-Respondent Sherry H. Lee also knew of Mr. Forbes' Samana business, but never purchased any of the product. There is no evidence that anyone in the subdivision,

including the Appellants-Respondents, ever complained or objected to Mr. Forbes commercial activities.

In November 1983, Forbes sold Lots 48, 49, 50, 51 and the building to the Respondents-Appellants, who began to operate a day care center on the premises. The Respondents-Appellants purchased the property with knowledge of its prior commercial use, and have expended approximately forty-three thousand ($43,000.00) dollars on improvements to the property.

This Court has held in *Archambault v. Sprouse*, 215 S. C. 336, 55 S. E. (2d) 70, 12 A. L. R. (3d) 388 (1949) that:

> If there has been unreasonable delay in asserting claims, or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expenses or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is asked.

See also *Arceneaux v. Arrington*, 284 S. C. 500, 327 S. E. (2d) 357 (S. C. App. 1985). Whether a plaintiff is barred by laches is to be determined in light of the circumstances in each particular case. *Ramantanin v. Poulos*, 240 S. C. 13, 124 S. E. (2d) 611 (1962); *Arceneaux, supra*.[1] A party is not necessarily barred from enforcing restrictive covenants where a previous deviation of the restrictions has been allowed. See *Circle Square Co. v. Atlantis Development Co.*, 267 S. C. 618, 230 S. E. (2d) 704 (1976).

In the instant case, we believe there is sufficient evidence to establish the defense of laches. The Appellants-Respondents knew of the prior commercial use of the property by Forbes and never expressed concern or objected to the property being put to commercial use. There is ample evidence to support a reliance by the Re-

---

[1] See also 20 Am. Jur. (2d) *Covenants* § 332.

spondents-Appellants on the permissibility of a commercial enterprise on the premises. Because of the Appellants-Respondents passivity with regard to the prior commercial use of the property, the Respondents-Appellants have adversely changed their position by expending approximately forty-three thousand ($43,000.00) dollars on improvements to the property.

The Respondents-Appellants have not expanded or extended the building. The use of Lot 50 for commercial purposes does not change the scheme of development of the subdivision, particularly since Lot 51 serves as a buffer between the day care center and the remainder of the residences in the subdivision. To allow the Appellants-Respondents to enforce the restrictive covenants as to Lot 50 would cause grave hardship and financial detriment to the Respondents-Appellants, with no substantial benefit or value to the Appellants-Respondents. We note that restricted Lot 50 is adjacent to property used for commercial activities; further, the character of the neighborhood is changing because of the influx of businesses into the area and the widening of Second Loop Road. See cf. *Elrod v. Phillips*, 214 N. C. 472, 199 S. E. 722 (1938).

The record is devoid of any evidence that Lot 51 has ever been used for commercial purposes and the Appellants-Respondents are not barred from enforcing the restrictive covenant on this particular lot. Based on the facts of this case, the paving of Lot 51 for parking spaces violates the restrictive covenants and must be removed.

We conclude that the Respondents-Appellants may continue to use Lot 50 for the operation of their business. The Respondents-Appellants are required to remove the paving on Lot 51 within ninety (90) days of the filing date of this opinion, and they are restrained and enjoined from using Lot 51 for any commercial purpose.

We affirm in part and reverse in part.

NESS, C. J., and GREGORY and HARWELL, JJ., concur.

Acting Associate Justice BRUCE LITTLEJOHN concurs. Associate Justice A. LEE CHANDLER not participating.