1124

Shida MALI and Daryoush J. Mali, Respondents v.
M. Glenn ODOM, Appellant.

(367 S. E. (2d) 166)

Court of Appeals

*Lawrence B. Orr* and *Helen T. McFadden, Bridges* and *Orr,* and *Eugene A. Fallon, Jr.,* Florence, *for appellant.*

*Francis T. Draine,* of *Draine, McLaren & Lee,* Columbia, *for respondents.*

Heard Feb. 23, 1988.

Decided April 4, 1988.

GOOLSBY, Judge:

This is an attorney malpractice action. The jury awarded the respondents Shida and Daryoush J. Mali $65,000 in actual damages. M. Glenn Odom appeals. The questions on appeal relate to the sufficiency of the evidence as to the applicable standard of care, to the defense of assumption of risk, to the exclusion of certain evidence challenged as hearsay, and to the admission of certain evidence challenged as

incompetent. We affirm in part, reverse in part, and remand for a new trial on the issue of actual damages.

On October 18, 1983, the Malis contracted to purchase property in Lakeside Subdivision in Florence County. The property consisted of four lots and a house. Two lots were unrestricted and two were restricted to residential use. The Malis intended to use the property for a school.

Odom, an attorney, was retained by the Malis to examine the title to the property and to handle the closing. Odom knew of the Malis' intention to operate a school on the property.

After the closing, which Odom attended, the Malis began remodeling the house to convert it into a school. Before the school could really get underway, however, adjoining landowners brought an action to enforce the restrictive covenants. The Circuit Court enjoined the Malis from using the two restricted lots for commercial purposes; however, following an appeal, the Supreme Court allowed one lot to be so used. *See Rabon v. Mali,* 289 S. C. 37, 344 S. E. (2d) 608 (1986).

The Malis then brought the instant action against Odom alleging he negligently represented them at the closing. Odom's answer denied he was negligent and asserted the affirmative defense of assumption of risk.

I.

Odom argues the trial court erred in failing to grant his motions for directed verdict and judgment notwithstanding the verdict. He contends the Malis did not establish by expert testimony the standard of care owed by Odom. We disagree.

A plaintiff in a legal malpractice case must ordinarily ■ establish by expert testimony the standard of care, unless the subject matter is of common knowledge to laypersons. Annot., 14 A.L.R. 4th 170, 179-80 (1982); 7 Am. Jur. (2d) *Attorneys at Law* § 225 at 268-69 (1980); 7A C.J.S. *Attorney & Client* § 271 b at 499 (1980); *see House v. Maddox,* 46 Ill. App. 3d 68, 4 Ill. Dec. 644, 360 N. E. (2d) 580 (1977) (the rules of evidence governing the trial of legal malpractice actions are the same as those against a doctor or dentist); *cf. Kemmerlin v. Wingate,* 274 S. C. 62, 65, 261 S. E. (2d) 50, 51 (1979) (the standard of care applicable to accountants "is the same as those" applied to doctors and other professionals);

*Botehlo v. Bycura,* 282 S. C. 578, 320 S. E. (2d) 59 (Ct. App. 1984) (expert evidence is required in a medical malpractice case except where no special learning is needed to evaluate the defendant's conduct).

Here, additional expert testimony was not required because Odom himself, a practicing lawyer, established the applicable standard of care. *See Stallings v. Ratliff,* 292 S. C. 349, 356 S. E. (2d) 414 (Ct. App. 1987) (expert testimony in a medical malpractice case regarding whether a physician breached a duty to disclose a particular risk was not required to create a jury question where an expert testified and the defendant physician himself admitted there was a duty to disclose and a conflict in testimony existed regarding whether the physician disclosed the risk). In published responses to the Malis' interrogatories, Odom conceded he had the "duty to disclose to the [Malis] the restrictions on the subject property" and the "duty to explain to [them] the impact of the restrictions on the subject property;" and in a published portion of his deposition, Odom agreed "it was incumbent upon [him] to disclose to [the Malis] . . . covenants or restrictions on [the] property."

Odom's breach of the applicable standard of care was established by Shida Mali's testimony that she and Odom "never talked about any restrictions," that he never explained to her that she might not be able to operate a school on the property, that "[n]othing was mentioned [at the closing] about restrictive covenants or . . . any problem with the school," and that, had Odom explained anything to her "about having a problem . . ., [she] would have stopped the closing right then."

We recognize Shida Mali's testimony was contradicted by the testimony of Odom that, at the closing, he informed Shida Mali of the restrictive covenants and of their significance and by the testimony of Jerry Lee Mills, who accompanied Shida Mali to the closing, that Odom at the closing "brought up the fact that there were restrictive covenants on the property." In deciding a motion either for directed verdict or for judgment notwithstanding the verdict, however, the trial judge does not weigh the evidence or determine the credibility of witnesses. *South*

*Carolina National Bank v. Silks,* _____ S. C. _____, 367 S. E. (2d) 421 (Ct. App. 1988). Jurors do those things when determining their verdict. The trial judge's duty is simply to consider the evidence and all its reasonable inferences in the light most favorable to the nonmoving party and to deny the motion if the evidence yields more than one inference. *Id.*

## II.

Odom further argues the trial court erred in not directing a verdict and in not granting his motion for judgment notwithstanding the verdict on the ground that the Malis assumed the risk involved in closing the transaction since the only evidence is that he advised the Malis of the existence of the restrictive covenants and they elected to purchase the property anyway. Again, we disagree.

Ordinarily, the question of whether a plaintiff assumed the risk of injury or damage is a question of fact to be determined by the jury. *Griffin v. Griffin,* 282 S. C. 288, 318 S. E. (2d) 24 (Ct.App. 1984). Here, the question of assumption of risk clearly constituted a jury question since, as we just noted, a factual dispute existed regarding whether Odom advised the Malis concerning the restrictions at any time prior to closing.

## III.

Odom also contends the trial court erred in excluding, as hearsay, testimony from Odom's wife concerning certain remarks she overheard him make in a telephone conversation with Shida Mali shortly after the closing.

Any error committed by the trial court in excluding the evidence was harmless. Odom himself testified fully regarding this telephone conversation. *See Rutledge v. St. Paul Fire and Marine Insurance Co.,* 286 S. C. 360, 334 S. E. (2d) 131 (Ct. App. 1985) (the exclusion of testimony from the insurer's expert witness held harmless where the testimony was cumulative to testimony given by the insured).

## IV.

### A.

Odom next argues the trial court erred in allowing Shida Mali to offer her opinion regarding the present value of the

subject property and regarding the value of personal property purchased for the Malis' school. He contends Shida Mali was not qualified to offer expert opinion testimony in these regards.

In South Carolina, an owner is qualified by the fact of ownership to give his or her estimate as to the value of his or her property unless the owner's want of qualification is so complete that his or her testimony is entirely worthless. *Seaboard Coast Line R.R. v. Harrelson*, 262 S. C. 43, 202 S. E. (2d) 4 (1974). The record here does not show that Shida Mali's knowledge of her property was so incomplete as to render her testimony about its value inadmissible. The trial court, therefore, committed no error in allowing Shida Mali to testify regarding the values she placed on the real and personal property in issue.

B.

Odom challenges the trial court's admission over his objection of evidence showing the school's anticipated monthly income and expenses. He claims this evidence reflected future lost profits and was speculative. The evidence, contained in three exhibits and offered through Anne Breneman Rowley, the school's director and the person charged with developing the school's curriculum, showed the school anticipated a monthly income of $18,346 and monthly expenses of $10,179.

We agree with Odom that the exhibits and the testimony concerning them provide evidence of future profits from the operation of the school lost to the Malis on a monthly basis. When the school's anticipated monthly expenses are subtracted from its anticipated monthly income, the school's anticipated monthly profit is $8,166. *See In re Letts' Estate*, 200 Cal. App. 2d 708, 19 Cal. Rptr. 502 (1962) (defining the word "profit" to mean the net of income over expenditures during a given period).

For this court to reverse a case based on the admission of evidence, both error and prejudice must be shown. *Timmons v. South Carolina Tricentennial Commission*, 254 S. C. 378, 175 S. E. (2d) 805 (1970), *app. dismissed, cert. denied*, 400 U.S. 986, 91 S. Ct. 460, 27 L. Ed. (2d) 435 (1971), *reh'g denied*, 401 U.S. 949, 91 S. Ct. 922, 28 L. Ed. (2d) 233 (1971).

In our view, Rowley's estimates as to the anticipated monthly income and expenses of the school were speculative, offered as they were without reference to any operational history of the school or to any particular standard or fixed method for estimating future income and expenses for a business of that kind. *See South Carolina Finance Corp. v. West Side Finance Co. of Anderson*, 236 S. C. 109, 123, 113 S. E. (2d) 329, 336 (1960) (In determining lost profits, "it is sufficient if there is a certain standard or fixed method by which profits sought to be recovered may be estimated and determined with a fair degree of accurancy."); *Petty v. Weyerhaeuser Co.*, 288 S. C. 349, 342 S. E. (2d) 611 (Ct. App. 1986) (a three-month operating period afforded a reasonable basis for determining lost profits). The trial court, therefore, committed error when it admitted these estimates.

We turn now to the question of prejudice.

Our Supreme Court, citing *Cooper Corp. v. Jeffcoat*, 217 S. C. 489, 61 S. E. (2d) 53 (1950), held in *South Carolina State Highway Department v. Graydon*, 246 S. C. 509, 144 S. E. (2d) 484 (1965), that the admission of incompetent evidence having some probative value upon a material issue of fact in the case is ordinarily presumed to be prejudicial.

Since evidence as to lost profits has probative value on the issue of damages, prejudice must be presumed.

The burden, therefore, rested on the Malis "to show affirmatively that no prejudice resulted" from the introduction of the questioned evidence. 5A C.J.S. *Appeal & Error* § 1677 at 705 (1958). This the Malis failed to do.

Moreover, the contents of the exhibits and Rowley's testimony concerning them went far beyond the stated purpose for their introduction. In argument before the trial court out of the presence of the jury, counsel for the Malis asserted the Malis did not seek the recovery of "future profits;" and, in his brief before this court, he declared the Malis "did not seek any recovery for lost profits." The purpose of the exhibits and Rowley's testimony regarding them, counsel maintained at trial, and again on appeal, was simply to show that much effort had gone into the development of the school and that the school had become operational. But the contested evidence, which was cumulative of no other, revealed, as we

indicated above, much more; and therein lay its prejudice. *See Woodward v. South Carolina Farm Bureau Insurance Co.*, 277 S. C. 29, 34, 282 S. E. (2d) 599, 602 (1981) (where the Supreme Court in a libel and slander action held the introduction of a letter relating to treatments given by the plaintiff physician to a claimant constituted reversible error because the letter also contained much language that was self-serving and irrelevant and went "far beyond the stated purpose of demonstrating treatments").

We further note that the prejudice caused by the trial judge's admission of the challenged evidence was not cured by the trial judge, either in limiting instructions or in his general charge to the jury. Although the trial judge in his general charge told the jury that the Malis, if the jury found for them, were not entitled to speculative damages, as in *Givens v. North Augusta Electric & Improvement Co.*, 91 S. C. 417, 424-25, 74 S. E. 1067, 1070 (1912), "there was no definite instruction given as to what claims for ... speculative damages should be excluded ..." and "the jury [was] not instructed except in a general way what damages should be included in their verdict." Because evidence of speculative damages consisting of lost profits had been admitted and the trial court never told the jury that they could not consider lost profits in determining damages, "it appears very probable that [Odom] was prejudiced by the course of the trial in that respect." *Id.*

The trial court, therefore, committed reversible error in admitting incompetent evidence that may have played, not improbably, some role in the jury's determination of damages. The trial court's erroneous admission of this incompetent evidence, however, warrants a new trial only upon the issue of actual damages since it could not have affected the jury's findings as to liability. *See Woodward v. South Carolina Farm Bureau Insurance Co., supra* (wherein the Supreme Court upheld the trial court's rulings regarding liability and remanded the case for a new trial on the issue of damages alone because of prejudicial error in the admission of irrelevant evidence relating only to damages).

Affirmed in part, reversed in part, and remanded.

SHAW and CURETON, JJ., concur.