472 S.E.2d 259 (1996)
Willie Lee LANGLEY, Respondent,
v.
Richard GRAHAM, Appellant.
No. 2518.
Court of Appeals of South Carolina.
Heard April 3, 1996.
Decided June 10, 1996.
C. Craig Young, of Willcox, McLeod, Buyck & Williams, Florence, for appellant.
J.M. Long, III, Conway, for respondent.
CURETON, Judge:
This is an appeal from the denial of a motion to vacate a default judgment entered against appellant Richard Graham (Graham). We reverse and remand.
Respondent, Willie Lee Langley (Langley), was standing beside a truck driven by Graham when Graham negligently struck him causing serious personal injuries. The accident occurred on May 13, 1989. Langley filed suit against Graham on March 12, 1992. On March 16, 1992, Langley attempted to serve the suit papers by certified mail, return receipt requested. Mildred Graham, Graham's sister who resided with him, signed the return receipt. Graham failed to file responsive pleadings, but the action was *260 stricken from the docket pursuant to Rule 40(c)(3), SCRCP. The action was restored to the active roster on December 12, 1992. On May 8, 1993, Langley again attempted to serve Graham by certified mail, return receipt requested. Mildred Graham again signed the return receipt. On both occasions, Langley mailed the suit papers certified mail, but delivery was not restricted to addressee only as required by Rule 4(d)(8), SCRCP.
Graham failed to respond to the complaint and a default judgment in the amount of $33,963.43 was entered against him on October 1, 1993. On May 27, 1994, Graham moved to have the default judgment vacated based on the court's lack of jurisdiction over his person. The trial judge denied the motion finding Graham failed to demonstrate the return receipt was signed by an unauthorized person pursuant to Rule 4(d)(8). Moreover, he found Graham's acknowledgment of actual receipt of the summons and complaint satisfied the requirements of Rule 4(j), SCRCP.
Graham contends the default judgment should be set aside because he did not sign the return receipt for the summons and complaint and, further, Langley failed to send the suit papers by "restricted delivery" mail. Rule 4(d)(8) provides:
Service of a summons and complaint upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule may be made by the plaintiff or by any person authorized to serve process pursuant to Rule 4(c), including a sheriff or his deputy, by registered or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant. Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person. If delivery of the process is refused or is returned undelivered, service shall be made as otherwise provided by these rules. (Emphasis added).
The trial judge held that because Graham failed to demonstrate his sister was not a person authorized to accept service on his behalf, he would not set aside the default judgment. We do not think that the trial court's interpretation of Rule 4(d)(8) was intended by the makers of the rule.
In Roche v. Young Bros., Inc., ___ S.C. ___, ___, 456 S.E.2d 897, 900 (1995), our Supreme Court held that a plaintiff satisfied the requirements of Rule 4(d)(8) when he demonstrated the "return receipt [was] restricted to the addressee and [accepted][1] by the defendant." Here, however, it is obvious from a cursory review of the return receipt that neither requirement has been met. Graham did not sign the return receipt,[2] and its delivery was not restricted to *261 "addressee" only. See 62B Am.Jur.2d Process, §§ 227-228 (1990) and 72 C.J.S. Process, § 55 (1987) (acceptance of service by someone other than addressee is defective where the mail is sent restricted delivery). Thus, we think Graham has met his burden under Rule 4(d)(8) of showing either an unauthorized person[3] signed the receipt or service by mail was defective in that delivery was not "restricted to the addressee."[4] In so holding, we note that the new federal rules have abolished service by mail, except to the extent permitted by applicable state practice. Under the federal rules, a defendant may waive service of process by signing an acknowledgement after being furnished a copy of the pleadings by mail. If the defendant refuses to sign the acknowledgement and it is returned to the plaintiff, the plaintiff must then effect service by other means. Fed.R.Civ.P. 4(d).
The trial judge also ruled that service was properly obtained pursuant to Rule 4(j), SCRCP which provides:
No other proof of service shall be required when acceptance of service is acknowledged in writing and signed by the person served or his attorney, and delivered to the person making service. The acknowledgement shall state the place and date service is accepted.
At the hearing to vacate the default judgment, Langley presented an affidavit signed by Graham in which Graham acknowledged receipt of the summons and complaint delivered to his sister on March 16, 1992, and again on May 9, 1993. The trial judge found the affidavit submitted constituted sufficient evidence of delivery and compliance with Rule 4(j), and met the requirements of due process. We disagree. Rule 4(j) relates back to Rule 4(g) which sets forth the requirements for proof of service. Rule 4(j) provides that notwithstanding the provisions of Rule 4(g), if the defendant acknowledges service in writing, no other proof is required. Rule 4(j) establishes no new procedure for service of process; rather, it is but a recognition of the long standing practice that acknowledgement or acceptance of service is equivalent to personal service. Williams v. Ray, 232 S.C. 373, 102 S.E.2d 368 (1958); Priester v. Priester, 131 S.C. 284, 127 S.E. 18 (1925); Donlevy & Co. v. Cooper & Co., 11 S.C.L. (2 Nott & McC.) 548 (1820). Service by written acceptance is not converted into "service by mail" by the mere fact that the paper served was transmitted by mail. Priester, 131 S.C. at 287, 127 S.E. at 19. Finally, our Supreme Court has held that an acknowledgement of service, made by a defendant after judgment has been rendered against him, is not equivalent to personal service upon him. State v. Cohen, 13 S.C. 198 (1880).
Therefore, the acceptance of service contemplated in Rule 4(j) must have been in existence at the time the default judgment was entered in order to constitute the equivalent of service under Rule 4(j). In the absence of proper proof of service under Rule 4(g) or an acceptance of service under Rule 4(j), the trial court was without personal jurisdiction to enter judgment against Graham. See Roche v. Young Bros., Inc., ___ S.C. ___, 456 S.E.2d 897 (1995); Patel v. Southern Brokers, Ltd., 277 S.C. 490, 289 S.E.2d 642 (1982); Webb v. Oberkampf Supply of Lubbock, Inc., 831 S.W.2d 61 (Tex.App. 1992).
Graham also contends the default judgment should be vacated because the statute of limitations barred the suit and because *262 enforcement of the judgment would be unfair, unjust and unconscionable. These defenses were neither pled nor ruled upon by the trial court and are therefore not preserved for review. Connolly v. People's Life Ins. Co., 299 S.C. 348, 384 S.E.2d 738 (1989). We may not address an issue not preserved for review. Hendrix v. Eastern Dist., Inc., ___ S.C. ___, 464 S.E.2d 112 (1995).
Finally, Graham argues the trial court erred in accepting the acknowledgement of service under Rule 4(j) because it was procured by Langley's attorney through unethical means. While we are concerned about this assertion,[5] we may not address it because the trial court made no ruling on the matter. Again, this issue is not preserved for our review. Connolly, 299 S.C. 348, 384 S.E.2d 738.
Accordingly, the order of the trial judge is reversed and the case remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
GOOLSBY and ANDERSON, JJ., concur.

*613 FACTS
This case arises out of respondent, Haynsworth, Marion, McKay & Geurard's (Haynsworth) representation of appellants, Smith and Murray, in a real estate development scheme. Smith and Murray contracted with a developer, Bill Bashor, to purchase lots on Wild Dunes. Bashor planned to develop the lots, then sell them for a profit. Two of the investors in the scheme were partners in the Haynsworth firm. Haynsworth represented Bashor in his acquisition and sale of the lots, as well as in various other legal matters. Haynsworth also represented Smith and Murray in the transaction, with Bashor paying their attorney's fees.
The development scheme fell through and the lots were ultimately foreclosed by the bank. Smith and Murray sued Haynsworth for malpractice. The jury returned a verdict for respondents.

ISSUES
1. Did the trial court err in excluding the testimony of appellants' expert witness?
2. Was the trial court's charge concerning powers of attorney improper?

I. EXPERT TESTIMONY
Respondents moved to exclude the testimony of appellants' expert, Professor Gregory Adams, contending his testimony concerning the Rules of Professional Conduct (RPC), Rule 407, SCACR, was inadmissible, and claiming that Adams was not qualified to give an expert opinion as he was neither a real estate lawyer nor licensed to practice law in South Carolina. The trial court agreed and excluded Professor Adams' testimony. This was error.[1]
A plaintiff in a legal malpractice action must generally establish the standard of care by expert testimony. See Mali v. Odom, 295 S.C. 78, 367 S.E.2d 166 (Ct.App. 1988).[2] The parameters of such testimony have, however, been the subject of much debate.
The preamble to the RPC state that "[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." Rule 407, SCACR.[3] The RPC are silent, however, as to whether or not they are relevant in assessing the duty of care, or whether an expert may base his opinions in reliance thereon. Courts in other jurisdictions are divided.
A majority of courts permit discussion of such a violation at trial as some evidence of the common law duty of care.[4]See Developments in The LawLawyers' Responsibilities and Lawyers' Responses, 107 Harv. L.Rev. 1547, 1567 (1994). See also Wolfram, The Code of Professional Responsibility as a Measure of Attorney Liability in Civil Litigation, 30 S.C.L.Rev. 281, 286-287 (1979). These courts generally rule that the expert must address his or her testimony to the *614 breach of a legal duty of care and not simply to breach of disciplinary rule. See Ambrosio and McLaughlin, The Use of Expert Witnesses in Establishing Liability in Legal Malpractice Cases, 61 Temp.L.R. 1351, 1363 (1988). Other Courts have held that ethical standards conclusively establish the duty of care and that any violation is negligence per se. Greenough, The Inadmissibility of Professional Standards in Legal Malpractice After Hizey v. Carpenter, 68 Wash.L.Rev. 395, 398-401 (1993) (hereinafter Greenough). A minority find that violation of an ethical rule establishes a rebuttable presumption of legal malpractice. Id. And, finally, a few courts hold that ethical standards are inadmissible in a legal malpractice action. Id. See Hizey v. Carpenter, 119 Wash.2d 251, 830 P.2d 646, 654 (1992); Bross v. Denny, 791 S.W.2d 416, 420 (Mo.Ct.App.1990).[5]
We concur with the majority of jurisdictions and hold that, in appropriate cases, the RPC may be relevant and admissible in assessing the legal duty of an attorney in a malpractice action. However, we adopt the view taken by the Supreme Court of Georgia in Allen v. Lefkoff, Duncan, Grimes & Dermer, 265 Ga. 374, 453 S.E.2d 719, 721-722 (1995), as follows:
This is not to say, however, that all of the Bar Rules would necessarily be relevant in every legal malpractice action. In order to relate to the standard of care in a particular case, we hold that a Bar Rule must be intended to protect a person in the plaintiffs position or be addressed to the particular harm.[6]
Finally, in its written order, the trial court ruled Adams unqualified in any event as he is not licensed to practice law in this state, and is not an expert in the area of real estate law. Appellants contend this ruling effectually establishes a "locality rule" requiring an expert to testify only to local standards governing malpractice.
This Court has abandoned the "locality rule" in the context of medical malpractice and accountants. King v. Williams, 276 S.C. 478, 279 S.E.2d 618 (1981) (medical malpractice); Folkens v. Hunt, 300 S.C. 251, 387 S.E.2d 265 (1990) (accountants). In the context of legal malpractice, most courts which originally adopted a strict locality rule have expanded the relevant geographical region to create a statewide standard of care. Developments, supra, 107 Harv.L.Rev. at 1566-67. See also Brewer, 45 S.C.L.Rev. at 757-8. The rationale for this development is that attorneys are generally regulated on a statewide basis, with state rules of procedure and different substantive laws. Id. See also Ambrosio and McLaughlin, 61 Temple L.Rev. at 1363-4. Accordingly, we adopt the majority view and rule that the standard to be applied in determining legal malpractice issues is statewide.
Further, the fact that Adams is not licensed to practice law in this state does not disqualify him as an expert. See McMillan v. Durant, 312 S.C. 200, 439 S.E.2d 829 (1993) (practitioner's experience teaching in a particular specialty and his professional interaction with practitioners of that specialty are facts sufficient to support his qualification as an expert. Defects in qualification go to weight rather than admissibility). Likewise, the fact that Adams is not a real estate lawyer does not prohibit his testimony concerning those ethical obligations which are relevant to appellants' claims.
*615 Accordingly, in light of our holding the matter must be reversed and remanded for a new trial. Although unnecessary to our decision, we address the following issue to prevent re-occurrence upon retrial.

II. POWER OF ATTORNEY CHARGE
Smith and Murray signed limited powers of attorney authorizing the Haynsworth firm to execute any documents necessary to the closing. In his charge to the jury, the trial court charged as follows, "[a] power of attorney limits an attorney's duties and responsibilities toward the plaintiff to only those duties named in the power of attorney." Appellants claim this charge effectively prohibited the jury from finding respondents liable for any conduct outside the powers of attorney. We agree.
The language used may have misled the jury to believe that the only duties owed by Haynsworth arose under the powers of attorney. The trial court should have instructed that the duties set forth in the powers of attorney applied only to matters arising thereunder and did not limit Haynsworth's responsibilities in other regards.
Finally, we find that respondents' additional sustaining grounds are without merit. The judgment below is reversed and remanded for a new trial.
REVERSED AND REMANDED.
FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.
NOTES
[1] In Roche, the Court placed no significance, however, on the fact the letter was not addressed to the corporation as addressee, but rather to an individual who was an officer of the corporation. In fact, the outside envelope containing the summons was simply addressed to "Edward L. Young, Post Office Box 3806, Florence, South Carolina 29502." Roche v. Young Bros., 313 S.C. 356, 358, 437 S.E.2d 560, 561 (Ct.App. 1993). There was no indication in the record that J. Neal Young, Young Brother's, Inc.'s Vice-President, who actually signed the return receipt, had any knowledge he was signing for corporate mail as opposed to personal mail of his brother, Edward L. Young, when he signed for the certified mail.
[2] Although the Court in Roche states Rule 4(d)(8) "does not require the specific addressee sign the return receipt," we think the Court intended to limit the force of the statement to service upon corporations. Service on a corporation may only be accomplished by service upon an authorized person; thus, a corporate defendant accepts service of process when a person authorized to accept service does so for the corporation. On the other hand, an individual ordinarily accepts service under the rule when he signs the return receipt. If the rule permitted acceptance by anyone who happens to pick up the mail, the requirement that delivery of the suit papers by certified mail be restricted to the addressee would have no meaning. Moreover, the last sentence of Rule 4(d)(8) provides that if a defendant refuses delivery of the suit papers, the plaintiff must accomplish service "as otherwise provided by these rules." This provision is further indication the rule requires actual acceptance by the defendant named on the certified mail receipt inasmuch as under prior case law, a defendant's refusal to accept a certified return receipt requested mailing did not affect the validity of the service under S.C.Code Ann. § 36-2-806 (1976), amended by § 36-2-806 (Supp. 1995), the Long Arm Statute. Patel v. Southern Brokers, Ltd., 277 S.C. 490, 289 S.E.2d 642 (1982).
[3] An authorized person is "an agent of the addressee who has been specifically authorized in writing by the addressee to receive his mail." 62B Am.Jur.2d Process, § 227 (1990). This is in keeping with the requirements of the Postal Regulations. See United States Postal Service Domestic Mail Manual 49 § 916-3.3 (Sept. 1, 1995).
[4] We view the requirement of showing that the certified mail was properly sent as mandated by the Rule 4(d)(8) to be Langley's burden, not Graham's. See Roche, ___ S.C. at ___, 456 S.E.2d at 900 (plaintiff must show compliance with the rule).
[5] Graham indicates in his affidavit that he was not told what he was signing when he signed the acknowledgement of service. He further states Langley's counsel "took advantage of [him] in that he failed to fully explain the circumstances surrounding the document [he] was signing and the contents of the document [he] was signing."
[1] Respondents contend appellants did not adequately proffer Adams' testimony. We disagree. Adams testified he had formed opinions concerning the Haynsworth firm's duties and the breaches thereof. We find the proffered testimony fairly shows what the rejected testimony would have been. State v. Roper, 274 S.C. 14, 260 S.E.2d 705 (1979). Further, given that the reason for the proffer was to establish that Adams was, in fact, qualified as an expert, we find it was sufficient. Cf. Lee v. Suess, ___ S.C. ___, 457 S.E.2d 344 (1995).
[2] There are four elements to a cause of action for legal malpractice: 1) the existence of an attorney-client relationship; 2) breach of a duty by the attorney; 3) damage to the client; and 4) proximate causation of the client's damages by the breach. Brewer, Expert Testimony in Legal Malpractice Cases, 45 S.C.L.Rev. 727, 730 (1994) (hereinafter Brewer).
[3] The RPC did not become effective until September 1, 1990. However, their applicability was not challenged at trial. In any event, the Code of Professional Responsibility in effect prior to adoption of the RPC likewise disclaimed the creation of standards of legal malpractice.
[4] The theory behind this view is that, since the ethical rules set the minimum standard of competency to be displayed by all attorneys, a violation thereof may be considered as evidence of a breach of the standard of care. See Sommers v. McKinney, 287 N.J.Super. 1, 670 A.2d 99, 105 (1996). Other courts admit this evidence in an analogous manner of admitting statutes, ordinances, or practice codes in defining the duty of care. See Greenough, infra.
[5] Even these courts, however, do not restrict an expert's right to base his opinions on the Rules. For example, Hizey held that an expert may rely on the disciplinary rules in forming an opinion as to an attorney's failure to conform to an ethical rule so long as the expert addresses the breach of a legal duty, and not simply the breach of an ethical rule. 830 P.2d at 654. Similarly, Bross did not preclude an expert's reliance on the Rules. 791 S.W.2d at 420-21. One court has rejected expert testimony where it was based solely on an attorney's violation of ethical rules. Lazy Seven Coal Sales, Inc. v. Stone and Hinds, 813 S.W.2d 400 (Tenn.1991). That court noted, however, that the Code may be relevant in determining the standard of care and may provide guidance in ascertaining lawyers' obligations. 813 S.W.2d at 405.
[6] The failure to comply with the RPC should not, however, be considered as evidence of negligence per se. It is merely a circumstance that, along with other facts and circumstances, may be considered in determining whether the attorney acted with reasonable care in fulfilling his legal duties to a client.