THIS OPINION HAS NO PRECEDENTIAL
VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH
CAROLINA
In The Court of Appeals

 
 
 
 Paul E. Hill and Vera H.
 Hill,        Respondents,
 
 
 

v.

 
 
 
 Charles A. Marsh and Carol
 P. Marsh,        Appellants.
 
 
 

Appeal From Pickens County
Charles B. Simmons, Jr., Circuit Court Judge

Unpublished Opinion No.
2005-UP-001
Submitted November 1, 2004  Filed January 7, 2005

AFFIRMED

 
 
 
 C. Thomas Wyche and David L.
 Freeman, of Greenville, for Appellants.
 Brian Keith James, of
 Easley, for Respondents.
 
 
 

PER CURIAM: Charles and Carol
Marsh appeal the trial courts order requiring them to remove a garage from
their property because it violates their subdivisions restrictive
covenants.  We affirm.[1] 
FACTS
The Marshes and Paul and Vera Hill
own adjacent properties in a four-lot subdivision located on Lake Keowee in
Pickens County.  The Hills use their house in the subdivision as a
secondary residence.  The Marshes live year-round in their house in the
subdivision.  The deeds for every lot in the subdivision contain identical
restrictive covenants.  The restrictions include a clause stating: 
No trailer, tent, shack, barn, temporary building, out building, shanty or
mobile home of any description shall be placed or erected on said lot of land.
In 1988, the Marshes approached the
Hills and asked for permission to build a tool shed on their property.  The
Hills initially objected to the tool shed because they believed it constituted
an out building in violation of the restrictive covenants.  However,
the Hills eventually agreed to allow the Marshes to build the tool shed when the
Marshes promised not to build any more outbuildings.  Subsequently, in
1992, the Marshes built a carport on their lot.  The carport was
constructed while the Hills were away from their lake home.  The Marshes
neither informed the Hills of their intention to erect the carport nor sought
permission to do so.  In 1996, the Marshes built a two-car garage on their
lot.  The garage was also constructed during a time when the Hills were
away from their lake home.  
On March 7, 2001, the Hills returned
to their lake home after being away for an extended period of time.  They
noticed that the carport had been dismantled and moved away.  A neighbor
informed the Hills that the Marshes were planning to build a new three or
four-car garage in its place.  The next day the Hills sought the advice of
a local attorney.  On the attorneys advice, the Hills wrote a letter to
the Marshes expressing their opposition to a new garage being constructed where
the carport had been located.  On April 19, 2001, the Hills noticed
blocks going up around the perimeter of space where the proposed building was to
have been constructed.  The Marshes attorney assured the Hills
attorney that the blocks were only going to be used as a retaining wall for a
parking area.  However, on June 7, 2001, the Hills attorney received a
letter from the Marshes attorney stating the Marshes had decided to build a
new garage and that they were going to connect it to their house by means of a
wooden walkway and bridge.  When the Hills returned to their house on June
22, 2001, most of the construction of the new garage had been completed. 
The new garage is 1,231 square feet and currently houses four cars and a
boat. 
The Hills filed this action on
August 20, 2001, seeking removal of the new garage from the Marshes lot.[2]  After a hearing, the trial
court sent a letter to both parties trial counsel outlining its ruling. 
The ruling stated that the new garage was in violation of the restrictive
covenants and required the Marshes to remove the garage from their
property.  Prior to the proposed order being submitted by the Hills
attorney, the Marshes discharged their trial counsel and retained a new
attorney. 
Before the final order was entered,
the Marshes new attorney filed a motion for judgment and, alternatively, a
motion to supplement the record.  The trial court denied both motions and
entered a final order.  The final order required the Marshes to remove the
new garage from their property because it violated the restrictive
covenants.  The Marshes filed a motion for rehearing, amendment, and for
stay and suspension of injunction pursuant to Rules 52, 59, and 62, SCRCP. 
The trial court denied the motion for rehearing and amendment and stayed the
injunction during the pendency of an appeal.  This appeal followed.  
STANDARD OF REVIEW
An action to enforce a restrictive
covenant is in equity.  South Carolina Dept of Natural Res. v. Town
of McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001).  In
an appeal from an equitable action, tried by a special referee alone, the
appellate court has jurisdiction to find facts in accordance with our own view
of the preponderance of the evidence.  Id.  The court should
not, however, disregard the findings of the special referee, who was in a better
position to weigh the credibility of witnesses.  Tiger, Inc. v. Fisher
Agro, Inc., 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1990).
LAW/ANALYSIS
I.  Negative reciprocal
easement
The Marshes argue on appeal that the
Hills have no legal right to enforce the
restrictive covenants against them.  We disagree. 

 [I]t is well settled in this state
 that where the owner of a tract of land subdivides it and sells the distinct
 parcels thereto to separate grantees, imposing restrictions on its use
 pursuant to a general plan of development or improvement, such restrictions
 may be enforced by any grantee against any other grantee.

Bomar v. Echols, 270 S.C.
676, 679, 244 S.E.2d 308, 310 (1978). 
Restrictive covenants may be created
in express terms or by implication.  Id.  Where they arise
by implication, the restrictions are said to create a reciprocal negative
easement.  Id.
One seeking to show a reciprocal
negative easement must establish four elements:  (1) a common grantor; (2)
a designation of the land or tract subject to restrictions; (3) a general plan
or scheme of restriction in existence for the designated land or tract; (4) the
restrictive covenants run with the land.  Id.  at 679-80, 244
S.E.2d at 310.  In determining whether reciprocal negative easements have
been created, the court should look not only to the language of the deeds, but
also the circumstances surrounding the origin of covenants.  Id. at
680, 244 S.E.2d at 310.  In order to establish a restrictive covenant by
implication, the implication must be plain and unmistakable.  Bomar
at 270 S.C. at 680, 244 S.E.2d at 311. 
In Bomar, the Respondents
were seeking to enforce restrictions that were in their deeds against the
Appellant, whose deed did not contain the same restrictions.  Of the
fourteen conveyances by the Vaughn family from the tract originally owned by A.
H. Vaughn, only six conveyances, all originating from Grover Vaughn and made
from 1953 to 1959, were restricted as to use by provisions in the deeds. 
No master subdivision plat had been made nor had any member of the Vaughn family
undertaken to improve or develop the land for use as a subdivision.  In
addition, no blanket or general restrictions conveying the Vaughn tract had ever
been recorded.  The supreme court held: 

 Without more, we are unable to
 conclude that these piecemeal, lot by lot sales from a large tract of land
 over a considerable time span, made without reference to a master plat,
 constitute a general plan or scheme.  The provision permitting the
 restrictions to be enforced by the grantor or any purchaser of land from the
 Vaughn tract can not have the effect, as contended by the respondents, of
 transforming restrictions applicable to specific lots into blanket
 restrictions.

Id.  at 681, 244 S.E.2d
at 311. 
The Marshes assert the Hills failed
to satisfy the third element of a general plan or scheme of restriction. 
We disagree.  Jerry Mehan, the original developer of the subdivision filed
a plat on April 6, 1976 showing tract subdivided into four lots.  He sold
the first of these lots, Lot 1, to the Hills predecessor in interest on April
2, 1976.  He sold another lot, Lot 3, on April 4, 1973.  He next sold
the Marshes their lot, Lot 2, on November 4, 1977.  He sold the final lot,
Lot 4, on September 29, 1982.  In each deed conveying the lots, Mehan
included the exact same restrictions. 
Unlike the deeds in Bomar, all of
these deeds were executed relatively close in time and included the same
restrictions.  We agree with the trial court that the reciprocal right of
enforcement can be implied in the deeds.  Accordingly, we hold the trial
court did not err in holding the Hills had the right to enforce the restrictive
covenants. 
II.  Waiver, estoppel, and
laches   
The Marshes next argue that the
Hills are barred by the doctrines of waiver, estoppel, and laches from enforcing
the covenants because the Hills acquiesced in other neighborhood violations of
the restrictive covenants.  We disagree. 

 If there has been unreasonable
 delay in asserting claims, or if, knowing his rights, a party does not
 seasonably avail himself of means at hand for their enforcement, but suffers
 his adversary to incur expenses or enter into obligations or otherwise change
 his position, or in any way by inaction lulls suspicion of his demands to the
 harm of the other, or if there has been actual or passive acquiescence in the
 performance of the act complained of, then equity will ordinarily refuse her
 aid for the establishment of an admitted right, especially if an injunction is
 asked.

Rabon v. Mali, 289 S.C. 37,
40, 344 S.E.2d 608, 610 (1986).
Waiver is the intentional
relinquishment of a known right.  Gibbs v. Kimbrell, 311 S.C.
261, 267, 428 S.E.2d 725, 729 (Ct. App. 1993).  A party is not necessarily
barred from enforcing restrictive covenants where a previous deviation of the
restrictions has been allowed.  Rabon, 289 S.C. at 40, 344 S.E.2d at
610.  A partys waiver of the right to object to a minor violation of a
covenant does not result in waiver of the right to object to a subsequent and
more substantial violation.  Gibbs, 311 S.C. at 268, 428 S.E.2d at
729. 
Laches is the negligent failure
to act for an unreasonable period of time.  Gibbs, 311 S.C. at
269, 428 S.E.2d at 730.  However, delay alone in the assertion of a right,
without injury to the adversary, does not constitute laches.  Id. 
Whether a plaintiff is barred by laches is to be determined in light of the
circumstances in each particular case.  Rabon, 289 S.C. at 40, 344
S.E.2d at 610.

 Estoppel arises when a party,
 relying upon what another has said or done, changes his position to his
 detriment.  Additionally, estoppel arises when a party observes another
 dealing with his property in a manner inconsistent with his rights and makes
 no objection while the other changes his position in reliance on the partys
 silence; the partys silence is acquiescence that estops him from later
 seeking relief. 

Gibbs, 311 S.C. at 268, 428
S.E.2d at 729 (citations omitted).
The Marshes rely on Rabon. 
We find that case distinguishable from the present case.  In Rabon,
the Malis predecessor in title had used three of his four lots in a
subdivision for commercial purposes for years before selling the property to the
Malis, despite the restrictions against such use on one of the lots, Lot
50.  The supreme court found the objecting property owners knew of the
prior commercial use of the property and never expressed concern or objected to
the property being put to commercial use.  The court also found ample
evidence to support reliance by the Malis on the permissibility of a commercial
enterprise on the premises.  It noted that because of the objecting
landowners passivity with regard to the prior commercial use of the property,
the Malis had adversely changed their position by expending approximately
$43,000.00 dollars on improvements to the property.  The supreme court held
the Malis could continue using Lot 50 for commercial purposes; however the court
also held that as there was no indication Lot 51 had been used for commercial
purposes in the past, the objecting property owners were not barred from
enforcing the restrictive covenant on this particular lot. 
In finding the Hills were not barred
from enforcing the restrictive covenants, the trial court relied on Gibbs. 
In Gibbs, the Gibbs and Kimbrells owned adjacent lots in a forty-five lot
subdivision subject to restrictive covenants.  For over 10 years, the
Kimbrells predecessors in title, the Reids, had operated a blueberry farm on
their lots.  The farm was only a part-time business, which the Reids
operated only on the weekends.  Two years before the Kimbrells purchased
their lots, the Gibbs granted the Reids permission to build a shed on the
lots.  The shed did not have a foundation or walls and was easily
movable.  After purchasing the property, the Kimbrells informed the Gibbs
that they intended to construct a garage on their property and operate an
automobile repair business thereupon.  After the Kimbrells poured the
concrete floor, the Gibbs brought an action to enjoin the Kimbrells from
operating a car repair business on their property because it violated the
subdivisions restrictive covenants.  Although the court had prohibited
the erection of any buildings on the property during the pendency of the action,
the Kimbrells proceeded to add walls, a door, and a window to the shed. 
The trial court ordered the Kimbrells to remove the garage from their
property. 
On appeal, this court rejected the
Kimbrells assertion that the Gibbs were barred by waiver, laches or estoppel
from enforcing the restrictive covenants.  The court held that although the
Gibbs may have intended to waive their objections to the operation of a
blueberry farm or similar activity, they had not waived their right to object to
a significantly different activity. 
This court also similarly rejected
the Kimbrells estoppel arguments.  It held that there was no evidence
that the Kimbrells had changed their position in reliance on any actions by the
Gibbs.  As to the Kimbrells argument that the Gibbs were estopped from
enforcing the covenants because the Gibbs permitted multiple violations by other
subdivision residents, this court noted that in filing their action against the
Kimbrells, the Gibbs had objected to the only violations of which they were
aware.  The court further held:  Regardless, the violation of
covenants by other residents of the subdivision without objection by the Gibbs
would not affect their right to enforce the covenants against the Kimbrells
unless the character of the subdivision has changed so radically as to defeat
the purpose of the covenants.  Gibbs, 311 S.C. at 268-69, 428
S.E.2d at 730.  Therefore, a plaintiff can enforce restrictive covenants
against a defendant whether or not the plaintiff has enforced those covenants
against other residents in a subdivision.
Finally, the court held the Gibbs
were not barred by laches in that they had acted with reasonable diligence in
initiating their action within five months of learning of the Kimbrells
plans.  The court further ruled: Regardless, a party [who] openly
defies known rights, in the absence of anything to mislead him . . . is not in a
position to urge as a bar [his adversarys] failure to take the most instant
conceivable resort to the courts. Id. at 269, 428 S.E.2d at 730 (quoting Archambault
v. Sprouse, 218 S.C. 500, 509, 63 S.E.2d 459, 463 (1951)). 
In arguing the Hills are barred by
estoppel, waiver, and laches, the Marshes assert other lots in their subdivision
contain restrictive covenant violations.  Lot three in the subdivision is
vacant.  However, lot four in the subdivision contains a house, a
boathouse, a tool shed, and a garage.  The Marshes lot includes a
residence, a small garage, a tool shed, and the garage that is the subject of
this lawsuit and replaced a carport.  The Hills have a boathouse on their
lot.
Dr. Hill testified that he and his
wife did not object to the two outbuildings on Lot 4 because the buildings can
barely be seen and have not changed the character of the neighborhood.  He
asserted that he had not even noticed one of the outbuildings because it looked
like a part of the house.  He stated his boathouse was on the lake owned by
Duke Power and not on the lot; thus it was not subject to the
restrictions.  As stated above, the Marshes sought and received the Hills
permission before constructing the tool shed, promising the Hills they would not
violate the covenants again.  The Marshes erected the subsequent buildings
when the Hills were away.  Dr. Hill testified that he did not voice his
objections with the other buildings because he did not want to sue a neighbor
over what he considered minor violations when the buildings had already been
completed.  However, he claimed the large garage, which is on the other
side of the road from the Marshes house, had changed the character of the
neighborhood. 
We agree with the trial court
finding the holding in Gibbs to be controlling in the case at hand. 
As a result, even if the Hills did acquiesce in other minor subdivision
violations, they did not waive their right to require the Marshes to remove the
garage, which is a major violation and different from the other
violations. 
The Marshes defense of estoppel
fails as they cannot establish that they changed their position to their
detriment based on the Hills actions.  Their defense of laches fails for
the same reason.  The Hills objected to the construction of the garage as
soon as they learned of the Marshes plans.  Although the Marshes
completed the garage at a cost of $40,000, they did so knowing of the Hills
objections. 
Finally, we find misplaced the
Marshes reliance on Honnicutt v. Rickenbacker, 268 S.C. 511, 234
S.E.2d 887 (1977).  In Honnicutt, the supreme court held:

 The issuance of a mandatory
 injunction depends upon the equities between the parties, and it rests in the
 sound judicial discretion of the court whether such an injunction should be
 granted.  Where a great injury will be done to the defendant, with very
 little if any to the plaintiff, the courts will deny equitable relief. 

Id.  at 515-16, 234
S.E.2d at 889.  The court reversed a portion of an order that granted a
mandatory injunction requiring the removal of a commercial building erected in
violation of restrictive covenants.  Instead, it allowed the appellants the
opportunity to convert the building to residential use to be in compliance with
the restrictions. 
The Marshes argue:  It would
be a shame under the circumstances to order the Marshes to destroy the building
which cost a great deal to erect and will cost a great deal to tear down. 
The Marshes rely on equitable principles to protect them when they constructed
their garage with full knowledge that the garage was in violation of the
covenants and that the Hills objected to its construction.  Two of the
long-standing equitable maxims are No person shall be allowed to reap the
benefits arising from his own wrongful acts, and  He who seeks equity
must do equity.  Taff v. Smith, 114 S.C. 306, 312, 103 S.E. 551,
553 (1920).  We find the Marshes constructed the garage at their own
risk.  They cannot  rely on equity to allow them to keep the product
of their own wrongful acts. 
CONCLUSION
For the reasons stated above, the
order of the trial court is
AFFIRMED.
HUFF, KITTREDGE, and BEATTY, JJ.,
concur. 

[1]We decide this case without oral argument pursuant to Rule 215,
SCACR.
[2] The Hills original attorney was unable, due to time
constraints, to file suit on behalf of the Hills.  However, he referred the
Hills to their current attorney, who filed this suit.